THE ROSENCRANZ & WEBER COMPANY ET AL.

v.

SETH F. HANCHETT ET AL.

*Bailments—Delivery of Goods to be Sold—Fraud—Evidence—Foreclosure.*

1. A delivery of goods to a retail dealer to be sold by him for cash, at not less than the invoice price, he to retain as commissions what he can get above that price, and to return the goods or the money received for them when called upon so to do, does not amount to a sale, even as to creditors of such dealer.

2. In the case presented, the evidence is wholly insufficient to establish that the bailment was fraudulent in fact.

[Opinion filed January 16, 1889.]

APPEAL from the Superior Court of Cook County; the Hon. JULIUS S. GRINNELL, Judge, presiding.

Appellee Hanchett, as sheriff, levied an execution placed in his hands by the appellees, Bryant & Sproehnle, upon certain jewelry which was found in the possession of Shute, the defendant in the execution, in his jewelry store in South Chicago.

Appellants replevied the goods, claiming them as their goods which they had placed in Shute's hands to sell for them as their agent. The trial was before the court without a jury, and the finding was against appellants. There was no conflict of evidence as to what were the terms under which appellants furnished the goods to Shute.

The witnesses Weber and Shute stated the arrangement as follows:

Weber: " The arrangement with Shute was this: I told Shute I would bring him down a lot of goods to equal or exceed $1,000, and I was to have the privilege of coming down whenever I saw fit and check up that stock of goods, and under no circumstances must any of the goods leave the store unless he got the money for them, and that either the goods or the money was to be there at all times. I made a list of the goods taken there, possibly on our regular bill-heads, but generally on memorandum bill-heads, with the prices fixed. He was to sell the goods at whatever he saw fit above the price billed to him, the wholesale price, and the proceeds of the sale were to come to us—that is, the invoice price. He was selling for his own benefit, so far as profit was concerned. Shute did not sell on credit with our consent. We told him he should not. As a general thing, he spoke to me when he sold on credit."

Shute: "Plaintiff agreed to leave some goods with me to sell. The goods remained there till sold. I accounted to it for the sale. Plaintiff first gave me about $1,000 worth under such conditions. Weber, I think, largely selected the goods and brought them down; afterward he came and checked over such as were there. If any were not there, I paid him for them. I had instructions from plaintiff about selling the goods. I was to sell for cash, and I sold for cash. I was carrying on that business for our mutual benefit. So far as these goods were concerned, I was not carrying on business on my own hook. I had all the profits of the business above the wholesale price of the goods, like any other retail dealer. Plaintiff did not pay any part of my expenses. I kept a bank account, and deposited part of my cash receipts. I kept no separate account of plaintiff's money from my own. When I got goods myself plaintiff sometimes gave me a memorandum bill, and sometimes billed to me as agent. I did not change my sign."

Mr. D. BLACKMAN, for appellant.

Rosencranz & Weber Co. v. Hanchett.

Messrs. McCLELLAN, CUMMINS & MOULTON, for appellees.

Where the owner of personal property delivers it to another with the understanding on the part of such other person that he may become the owner of it, or may sell and convey the title to it by paying the vendor a specified price, the transaction is a conditional sale, and the property, while in the possession of the person to whom it was so delivered, is liable to be taken by legal process of his creditors who have no notice of the real owner's rights.    Van Duzer v. Allen, 90 Ill. 499, p. 502 ; Mich. Central R. R. v. Phillips, 60 Ill. 190; Brundage v. Camp, 21 Ill. 330 ; Murch v. Wright, 46 Ill. 487 ; McCormack v. Hadden, 37 Ill. 370 ; Hervey v. R. I. Locomotive Works, 93 U. S. 671; Hurford v. Daniels, 102 U. S. 243 ; Marvin Safe Co. v. Norton, 7 Atlantic Rep. p. 421.

A conditional sale of goods to be disposed of at retail by the vendee is fraudulent and void as to creditors, even in jurisdictions where conditional sales generally are held valid as to creditors without notice.    Winchester Wagon Works v. Carman, 9 N. E. (Ind.) Rep. 709.

Where the owner of goods delivers them to a third party for his selection or approval, with a view to such third party purchasing the same, they become the property of such third party as to his creditors without notice by his retaining possession of the same for an indefinite time, showing an intention to keep them in which the plaintiff acquiesces.    Benjamin on Sales, Edition 1883, pp. 791–796; Elphick v. Barnes, 5 C. P. D. p. 326 ; Moss v. Sweet, 16 Q. B. 495 ; Humphreys v. Caravallo, 16 East, 45; Towle v. White, 21 Weekly Rep. 466 ; S· C. L. R., 6 Ch. App. 402, 403.

MORAN, P. J.    There is no evidence of actual fraud in this case, and the only question is, therefore, whether the arrangement testified to by the witnesses Weber and Shute was fraudulent in law as being a clothing of Shute with the ostensible ownership of the goods while the company attempted to retain the real ownership in them.    If it was such, then the title to the goods passed to Shute, so as to be liable to levy and sale under an execution against him.    So if the arrangement was in fact but a scheme or artifice to sell the goods to

Shute, under the form of a consignment or bailment, it would, as to his creditors, be held that the title was in him. But we are unable to find in this arrangement any evidence that it was anything else than what it purported to be, a delivery of goods by appellants to Shute, to be sold by him for cash at not less than the invoice price, he to have anything he could get over the invoice price for his commissions.

Shute contracted no indebtedness for the goods delivered to him, and was only to pay for such articles as he might sell. The course of business was such as, in our opinion, to repel the conclusion that the agreement was merely colorable. There was a regular system of checking up of the goods on hand and settling for such as had been sold, and there was no security taken that those not sold should ever be paid for. The case is clearly distinguishable from what is known as conditional sale, and also from such cases as Bastress v. Chickering, 18 Ill. App. 198. In that case promissory notes were given for the pianos which were delivered under the contract, and there were many other features of the arrangement which led to the conclusion that the consignment was but a device or contrivance to cover a sale and retain a vendor's lien upon the goods.

Here the transaction is in form and purpose a delivery of goods to be sold on commission, which commission is contingent on the amount for which they can be sold above the invoice price. It can not be pretended that the appellants had not the right to retake the goods which, at any visit to Shute's, they found to be in his hands and unsold. He was to have their goods on hand for them at all times or the money for such as he had sold. Under such an arrangement no interest in the goods passed to Shute. They were in his possession, it is true, but were at the risk of appellants, and if they had been destroyed by fire or otherwise, without Shute's fault, the loss would clearly have been appellant's.

In McCullough v. Porter, 4 Watts & S., 177, goods were placed in the hands of the execution debtor, who, at the time, was insolvent, to be sold by him at not less than the invoice prices of the said goods, the invoice price of the goods, when the same were sold, to be paid over by him, and all for which

said goods should sell for above invoice price to be retained by him for the support of himself and family; the goods remaining on hand or unsold to be returned by him, and for the goods so returned he was to have credit.

The goods were levied on and sold under the execution, and trespass brought to recover the value by the parties who delivered the goods under such agreement to the execution debtor.    Chief Justice Gibson delivered the opinion of the court on the appeal, and, construing the contract, said :   " The plaintiffs simply agreed to consign goods to an insolvent friend to be sold on their account for not less than the invoice prices; and the proceeds to the value of those prices were to be remitted. to them on the goods returned.   Thus the excess of the sales over the invoiced prices was to be the amount of the commissions, and that it was to be contingent, is the only feature of the case which differs it from the ordinary consignment on commission."   The learned judge then goes on to show that if such an agreement is not a trick to cover an understanding inconsistent with its terms, which is a question of fact, it must be held, as a matter of legal construction, not to be a fraud in law, and in illustrating says: " Were I to put my horse into the custody of a friend to be sold for a designated sum, with permission to retain whatever he should get beyond it, it would not be suspected that I had ceased to own him in the meantime, or that my friend would not be bound to return him, even without a stipulation, should he have failed to obtain the prescribed price."   See also Thompson v. Pratt, 94 Pa. St. 275; Schloss v. Heilbronner, 27 Vt. 623.

As it was charged that the arrangement was fraudulent in fact, the evidence showing the pretended foreclosure of the chattel mortgage, and that the goods covered by the same were left in the possession of Shute so short a time before the arrangement attacked was made, was competent to be considered.   But when considered, we are of opinion that it was wholly insufficient to establish that the bailment was fraudulent in fact.

The bailment did not cover, or purport to cover, any of the goods which were mortgaged, and the title to none of the

goods which were covered by the mortgage is involved in the suit. The proof of the sham transaction with reference to the foreclosure is not enough to show that the bailment was a fraud in fact against the clear statements of the witnesses. The finding in that respect is, we think, clearly against the evidence. The judgment must therefore be reversed and the cause remanded.

*Reversed and remanded.*