BERRY HARDING v. THE STATE.

No. 3162. Decided April 18, 1906.

**1.—Theft of Horse—Bailment—Other Offenses—Harmless Error.**

Where in a prosecution for theft defendant on cross-examination was asked whether he stole a coat from a certain person at a certain time, and whether he remembered what he stole the last two times he was sent to jail, and he replied that he never stole anything, there was no error although the method of examination was improper.

**2.—Same—Harmless Error.**

While it was not a proper method of examination to ask a witness whether appellant swapped them a farewell for a horse; it was evidently a piece of pleasantry not calculated to injure appellant's rights.

**3.—Same—Argument of Counsel—Special Charge.**

While it was improper argument for State's counsel to offer to bet the jury his gun and dog against five cents if they turned defendant loose, before six days the grand jury would have him indicted for stealing another horse; in the absence of a special charge and considering said remarks under the circumstances there was no error.

**4.—Same—Definition of Offense—Charge of Court.**

Where appellant was charged with theft as bailee of property, it was improper for the court to define theft generally, yet the giving of such charge would not be reversible error; the definition of theft by bailment having also been submitted.

**5.—Same—Case Stated—Implied Consent—Bailment.**

Where in a prosecution for theft or property under bailment the evidence showed an implied consent to the taking, a bailment of the property was created and a conversion thereafter constituted theft.

Appeal from the Criminal District Court of Dallas.  Tried below before Hon. E. B. Muse.

Appeal from a conviction of. theft of a horse; penalty, two years imprisonment in the penitentiary.

The court charged the jury as to the general definition of theft, and also submitted to the jury the definition of bailment to be a delivery of personal property to another for some purpose upon a contract expressed or implied that such purpose shall be carried out. The court then instructed the jury as to the law of theft under bailment and then applied said law to the facts in proof.  Also submittted question of purchase.

By the owner of the alleged stolen horse the State proved that defendant approached him before the alleged theft, and said that he had about $300 which he got for a lot which he had sold, although his father objected to him selling the lot.  *  *  *  He said that he had rented a place and had bought several rigs on the installment plan, etc.  He said that he had seen the horse in question in the back yard and that he thought he could use him for a rustling pony.  Witness told him about the horse being balky and defendant said that that wouldn't make any difference.  He asked witness what he paid for him, and witness told him $40 for the horse, buggy and harness.  Defendant asked witness what he would take for the horse; he told him $30 for the whole out-fit.  *  *  *  "We didn't come to any trade at the store, but defendant was to come out at the house.  He was on horse back and he was to go out and if he got there before I did he was to wait for me; if I beat him there on the street car I was to wait for him.  When I got there he had his horse in the shafts of my buggy with a long rope attached to my horse and with his saddle on him and was leading the horse off.  I asked him where he was going and he said that he was going over to his father's grocery store, and rub some lime or something on the horse's legs to relieve the stiffness.  The horse had been driven about twenty miles the day before.  I stopped him and told him I couldn't do without a horse; he said that he had an old horse over there that his father had used in the family, etc., about nine years.  He said that he would bring that horse over, or another horse, or bring my horse back inside of two hours.  That was some time after dinner, probably 2 o'clock.  He didn't show up with the horse but phoned me and said that he was out to the fair grounds,

and was on the way to the Metzler dairy where this old horse was and told me he would certainly be up to see me by 7 o'clock in the morning. He didn't show up for a day or two. \* \* \* I couldn't locate him until the detective arrested him. I got the horse back after advertising him, from J. W. Watson, who had had him a week or two and had bought him from defendant. I saw the bill of sale where the horse had been sold by defendant for $10. \* \* \* I didn't agree to sell the horse unless he gave me my pay at the time. There was no agreement, only the defendant was to bring another horse there and we were to make the trade at that time. I hadn't seen the horse and I had not traded him for a horse. If the horse was satisfactory we were to make the trade not otherwise."

Defendant introduced testimony tending to show that he had purchased the horse alleged to have been stolen. The defendant went on the stand and testified that he traded for the horse from the owner and that the trade was complete when he took the horse away, detailing all the circumstances of the trade at the time he took the horse, and that he afterwards sold him to Watson for $10 because the horse was balky and he was disgusted with him. The other facts appear in the opinion of the court.

*Mathis & Freeman* and *R. M. Clark,* for appellant.—On question of charge on theft: Taylor v. State, 25 Texas Crim. App., 100. The record nowhere shows that the owner of the horse alleged to have been stolen, placed him in possession of defendant under a contract expressed or implied.

*J. E. Yantis,* Assistant Attorney-General, for the State.—For construction of article 877, Penal Code, see Malz v. State, 37 S. W. Rep., 748.

HENDERSON, JUDGE.—Appellant was charged with the theft of a horse, having acquired the same as a bailment under article 877, Penal Code.

Appellant complains of the method by which he was examined with reference to other offenses, to wit: Counsel for the State asked the following questions: "Berry, how many times have you been charged across there in the county court with the offense of theft in the last two years?" And again, "Berry, do you remember on the 27th day of February of this year of stealing a coat from a fellow named Beeler?" To the first question, defendant answered he did not remember; and he gave a negative answer to the second. And in the fifth bill of exceptions, it is shown defendant was asked: "Do you remember what you did steal the last two times you were sent to jail?" And he replied, "he never had stolen anything in his life." The answers of defendant could not have injured him. It was competent to ask if he had been charged or convicted of any

felony or theft, inasmuch as appellant had gone on the stand and become a witness in his own behalf, and he could be required to answer. The method pursued in the said bills, asking defendant if he had stolen the coat, etc., was improper: still we do not see it injured him, as his answers were favorable.

We make the same observations with reference to bill number 3. It was not a proper method of examination to ask witness H. O. Winfrey if appellant "did not swap them all a farewell for the horse." Still it was evidently a piece of pleasantry and not calculated to injure appellant's rights.

It was also improper for State's counsel to offer to bet the jury his gun and dog against 5 cents, if they turned defendant loose, before six days the grand jury would have him indicted for stealing another horse. No charge was asked with reference to this argument, and we do not consider it of that character that would require a reversal of this case.

Nor do we believe that it was improper for the court to have defined theft. Such a charge may not have been called for, yet the giving of the same would not be reversible error. Appellant was charged with theft as bailee of property. While in their essential elements general theft and theft of property under bailment are much alike, yet the definition of theft by bailment is somewhat different from general theft. The definition of the other character of theft in the charge would not constitute reversible error.

We think the testimony shows a bailment as to the property alleged to have been stolen; that is, the property was originally taken without any absolute consent; and the circumstances show an implied consent to the taking — especial leave granted to appellant by the owner of the horse to keep charge of the same, after he was seen going off with it, would create a bailment of the property, and the conversion of the same thereafter would constitute theft.

There being no error in the record, the judgment is affirmed.

*Affirmed.*

Brooks, Judge, absent.