## M. LEE v. THE STATE.

### No. 4254. Decided December 27, 1916.

### Rehearing denied March 28, 1917.

**1.—Theft by Bailee—Sufficiency of the Evidence—Charge of Court—Sale.**

Where, upon trial of theft by bailee, the evidence was sufficient to sustain the conviction, there was no reversible error, under a proper charge of the court, and it was not necessary for the court to give any of the special charges requested by the defendant on the issue of a sale of the alleged stolen goods.

**2.—Same—Value—Charge of Court.**

If the court's charge was ever subject to the criticism that it authorized the conviction of the defendant without regard to the value of the property, it was corrected before it was presented to the jury, and there was no error.

**3.—Same—Objections to Charge of Court—Weight of Evidence.**

Where the objections to the charge of the court on the ground that it was vague, indefinite, erroneous, and on the weight of the evidence without pointing out the specific matter complained of, the same is too general to call for review on appeal.

**4.—Same—Jury and Jury Law—Opinion by Juror.**

Where appellant complained that he had a case in the County Court and that one of the jurors who served on the instant case was empaneled on that jury who acquitted the defendant upon an instructed verdict, all of which was shown on his voir dire, and the juror further answered that he did not have any opinion as to the guilt or innocence of the defendant and nothing appeared in the record which showed to the contrary, there was no error.

**5.—Same—Evidence—Irrelevant Testimony.**

Where the rejected testimony had no connection with the case on trial and shed no light on the transaction alleged in the indictment, there was no error.

**6.—Same—Sufficiency of the Evidence—Theft by Bailee.**

Where, upon trial of theft by baileee, the evidence was sufficient to support the conviction, there was no reversible error.

**7.—Same—Statutes Construed—Bailment.**

Prior to 1887 we had theft by fraudulent taking; theft by fraudulent pretext, and embezzlement and swindling, all relating to the appropriation of personal property of another, etc., but a person was then guilty of no offense where the property was obtained by lawful means as now denounced by article 1348, Penal Code, under which this defendant was tried and convicted, and this statute covers every character of bailment, except one for the exclusive use and benefit

of the bailor. Following Malz v. State, 36 Texas Crim. Rep., 447, and other cases. Davidson, Judge, dissenting.

#### 8.—Same—Ejusdem Generis—Bailment—Statutes Construed.

It is suggested that under the rule of ejusdem generis a bailment for the purpose of sale would not come within the terms of article 1348, Penal Code, for the reason that under that rule only bailments similar in character to hiring and borrowing would be included. However, this question is set at rest by the former decisions of this court, and adversely to the defendant's contention. Following Malz v. State, 36 Texas Crim. Rep., 447, and other cases.

#### 9.—Same—Sale—Bailment—Statutes Construed—Lien Creditors—Bona Fide Purchasers.

Article 5654, Revised Civil Statutes, as construed in Eason v. DeLong, 38 Texas Civil Appeals, 531, has been held to be for the benefit of lien creditors and bona fide purchasers, and has no application to the instant case.

Appeal from the District Court of Tarrant. Tried below before the Hon. Jas. W. Swayne.

Appeal from a conviction of theft by bailee; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Graves & Houtchens,* for appellant.—On question of insufficiency of the evidence: Eason v. De Long, 38 Texas Civ. App., 531, 86 S. W. Rep., 347; Northcutt v. State, 60 Texas Crim. Rep., 259, 131 S. W. Rep., 1128; Williams v. Drummond Co., 44 S. W. Rep., 185; Hereforte v. Davis, 102 U. S. Rep., 35; Leonard v. State, 7 Texas Crim. App., 417; Henderson v. State, 55 Texas Crim. Rep., 640, 117 S. W. Rep., 825; Huggins v. State, 42 Texas Crim. Rep., 264, 60 S. W. Rep., 52; Epperson v. State, 3 S. W. Rep., 769; Aldrich v. State, 29 Texas Crim. App., 394, 16 S. W. Rep., 251; Butler v. State, 54 Texas Crim. Rep., 42, 111 S. W. Rep., 146, and cases cited in opinion.

On question of sale: Dowling v. State, 63 Texas Crim. Rep., 366, 140 S. W. Rep., 224; Grant v. State, 65 Texas Crim. Rep., 266, 143 S. W. Rep., 924; Martin v. State, 57 Texas Crim. Rep., 264, 122 S. W. Rep., 558.

On question of other transactions: Hays v. State, 73 Texas Crim. Rep., 58, 164 S. W. Rep., 841; Taylor v. State, 73 Texas Crim. Rep., 192, 164 S. W. Rep., 844; Ballow v. State, 42 Texas Crim. Rep., 263, 58 S. W. Rep., 1083.

On question of juror: Sessions v. State, 37 Texas Crim. Rep., 58, 62, 38 S. W. Rep., 605; Obenchain v. State, 35 Texas Crim. Rep., 490, 34 S. W. Rep., 238; Shannon v. State, 34 Texas Crim. Rep., 5, 28 S. W. Rep., 540.

*E. B. Hendricks,* Assistant Attorney General, for the State.

HARPER, Judge.—Appellant was tried under an indictment containing two counts, one charging embezzlement and the other theft by bailee. The court submitted only the count charging theft by bailee,

and appellant was convicted under this count, and his punishment assessed at four years confinement in the State penitentiary.

One of the contentions made is that the evidence offered in behalf of the State will not support a verdict of guilty of theft by bailee. The evidence of the man from whom appellant obtained the goods, Mr. G. C. Gauntt, is as follows:

"I know M. Lee and had a transaction with him on the 16th of October last year. At that time he came in my store early in the morning and took some merchandise out of the store and said he would return it or return the money on that very morning. I remember him taking out five suits, three dresses, two coats and possibly more. These goods were valued at $103.90 or more. I did not sell him the stuff but let him have it to sell or bring back and I was to pay him a commission for selling, as I had done on previous transactions, of fifteen per cent. He was to keep fifteen per cent of the value of the goods and pay me the balance. He did not bring either the goods or the money back on this occasion and I don't know what he did with that merchandise that morning. E. A. Corbett & Company is an incorporated company and E. A. Corbett is one of the interested parties. I did not give this defendant my consent to sell or appropriate this property for his own use. I let him have this property in Fort Worth, Tarrant County, Texas, on the 16th day of October, 1915."

Appellant testified in his own behalf, and he admits getting the goods in question, and testifies they were sold to him on a credit. Of course, if the goods were sold to appellant, and the title to them passed to him, he could not be guilty of theft as bailee, for bailment necessarily implies that one has in his possession the goods of another. After appellant had testified and introduced his evidence tending to show a sale to him on a credit, the court in his charge instructed the jury:

"You are further instructed that if you find and believe from the evidence in this case that on or about the date alleged in the indictment and at the same time of the transaction between the defendant and the witness Gauntt, the same being the transaction alleged in the indictment, that the defendant had a conversation with E. A. Corbett in which conversation and at which time the said E. A. Corbett agreed to extend and did extend to the defendant credit to the amount of $150 and that as a result of said conversation and in pursuance of said agreement, if any, E. A. Corbett & Company, acting through its agent, the witness Gauntt, sold to the defendant the goods described in the indictment on credit, and if you believe that the disposition of said goods to the defendant at said time and place was a sale, as that term is hereinafter defined and was not a bailment, as that term has been hereinbefore defined, or if you have a reasonable doubt thereof, you will acquit the defendant.

"By the term 'sale' is meant the agreed transfer of the title to prop-

erty from one person to another at an agreed price for a valuable consideration either paid at the time or agreed to be paid in the future."

Having thus instructed the jury, it was not necessary for the court to give any of the special charges requested by appellant on the issue of a sale of the goods to him by the owner—this charge fully covered that issue.

If the court's charge was ever subject to the criticism that "it authorized the conviction of appellant without regard to the value of the property," it was corrected before it was presented to the jury, for the charge as given specifically required that the jury find the property was of the value of $50, or over that amount, before they would be authorized to convict.

The court's charge as given is not "vague, indefinite and erroneous," and is not upon the weight to be given the testimony. The criticism that it was "vague, indefinite and erroneous" would be too general for a review of the charge, unless it was in some way attempted to be pointed out wherein it was vague, indefinite and erroneous.

There was no error in overruling that ground of the motion for new trial alleging the incompetency of the juror G. S. Miller. It appears that appellant had a case in the County Court, and Mr. Miller was empaneled on that jury. After one witness had been introduced the court instructed a verdict of not guilty in the County Court case. When examined on his voir dire, when the jury was being empaneled in this case, Mr. Miller stated, in answer to questions, that he was on that jury in the County Court,' and yet was accepted after so informing counsel. We will state, however, that counsel for appellant say they did not hear that answer of the juror. However, the court heard evidence, and Mr. Miller testifies, "At the time I was taken as a juror in this case, I did not have any opinion as to the guilt or innocence of the defendant," and no testimony was offered that he did have an opinion, or that he was biased or prejudiced in any respect.

There was no error in excluding the evidence of the witnesses Mabel Thompson, Louise Bell, and Blanch Lamont. Their testimony would relate solely to a transaction or transactions between appellant and A. Ballas, and would have no connection with or shed any light on the transaction charged in this indictment, wherein appellant is alleged to have the goods of E. A. Corbett & Company as bailee in his possession, and fraudulently converted same to his own use.

The only other question presented is, whether or not the facts will support a conviction of theft by bailee. The evidence offered in behalf of the State would authorize a jury to find that appellant went to one or two merchants in Fort Worth and made arrangements with them to sell and handle goods on the following plan: They would list the goods at the named price, and he would take them to sell under an agreement if he sold them he would receive fifteen per cent of the sale price of the goods, and if he did not succeed in selling the goods at the prices named, he would return the goods. On the morning of October

16th last he secured from Mr. Gauntt, the manager of the Popular Store in Fort Worth, goods of the value of $103.90 under such an agreement, and instead of attempting to make a sale of the goods or return them, appellant shortly thereafter left for New Orleans, Louisiana, and carried the goods with him, and there was going under a different name from the name he went under when he obtained the goods.

In order to determine whether or not appellant is guilty of the offense denounced by article 1348 of the Criminal Code, it is necessary, perhaps, to review our decisions and the Code prior to 1887, when this provision of the Code was first adopted. Prior to that time it had been held there was a *hiatus* in our Code, and a person who lawfully obtained possession of property and then appropriated it to his own use, was guilty of no offense.

In theft as defined by article 1329, it was held there must be a *fraudulent* taking. Muldrew v. State, 12 Texas Crim. App., 617, and cases cited in section 2425, Branch's Ann. Code. By article 1332 it was provided that the *taking* must be wrongful. So that if property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, unless the taking was obtained by *false pretext,* with the intent at the time of taking of depriving the owner of the value of the property, and with the intent at the time of the taking to appropriate it to the use of the person obtaining possession by the fraudulent pretext. Stokely v. State, 24 Texas Crim. App., 509; Morrison v. State, 17 Texas Crim. App., 34; Cain v. State, 21 Texas Crim. App., 662. Thus, under the old articles of the Code, there must have been a fraudulent taking or a taking by false pretext, with the intent at the time of taking to appropriate the property to the use of the person taking, or a person was not guilty of theft.

In embezzlement, it was held that before a person could be convicted under article 1416, there must be a fiduciary relation existing between the parties, and if the property was appropriated by a bailee, it must be that the bailment was for the exclusive benefit of the bailor. Johnson v. State, 71 Texas Crim. Rep., 206, 159 S. W. Rep., 849; Reed v. State, 16 Texas Crim. App., 586; Wilson v. State, 47 Texas Crim. Rep., 159.

In swindling, it was held, under article 1421, that it must have been the intention of the parties that the title pass, as well as the possession, of the property, otherwise a person could not be convicted under that provision of the Code. White v. State, 11 Texas Crim. App., 769, and cases cited under sec. 2626, Branch's Ann. Code.

Prior to 1887 we had theft by fraudulent taking; theft by fraudulent pretext, and embezzlement and swindling, all relating to the appropriation of personal property of another, and under each and all of those articles it was held in numerous cases that where the possession of the property was obtained by lawful means, and the intent to convert or appropriate it was subsequently formed, a person was guilty

of no offense under our Code.  Quitzow v. State, 1 Texas Crim. App., 65; Dow v. State, 12 Texas Crim. App., 343; Morrison v. State, 17 Texas Crim. App., 34; Cain v. State, 21 Texas Crim. App., 662; Tucker v. State, 21 Texas Crim. App., 699; Williams v. State, 22 Texas Crim. App., 332; Hernandez v. State, 20 Texas Crim. App., 151; Stokely v. State, 24 Texas Crim. App., 509.

T,ested by the rules announced in these provisions of the Code, and as construed by this court in the decisions cited, appellant was not guilty of theft by fraudulent taking, for the possession of the goods was voluntarily surrendered to him by the owner; he can not be said to have obtained possession of them by fraudulent pretext with the intent at the time of taking to appropriate to his own use, and deprive the owner of the value of the goods, for prior to this time he had obtained goods on the same terms, and lived up to the agreement, and no one can say that at the very time of taking he did not intend to live up to the agreement, and the conversion or appropriation of them to his own use was not a subsequently formed design; it was not swindling, because the evidence for the State would show there was no intention to pass the title to the goods to appellant, and the court instructed the jury if there was such intent to acquit appellant.  It was not embezzlement, because no fiduciary relation is shown to have existed between the parties, and the bailment was not for the exclusive use of the bailor, but was for the benefit of both bailer and bailee.

If the evidence for the State makes any offense, it was properly brought under article 1348, which was passed in 1887, and was intended to cover an appropriation of the property of another, not theretofore denounced by our Code, and that was where property of one person was obtained by another by contract of hiring or borrowing, or other bailment, and such person, while having possession, should fraudulently convert it to his own use, he should be held to be guilty of theft of such property.  It has been frequently held by this court that this statute covered every character of bailment, except one for the exclusive use and benefit of the bailor.  Fulcher v. State, 32 Texas Crim. Rep., 621; Malz v. State, 36 Texas Crim. Rep., 447; Harding v. State, 49 Texas Crim. Rep., 601; Northcutt v. State, 60 Texas Crim. Rep., 259; Thompson v. State, 67 Texas Crim. Rep., 660, 150 S. W. Rep., 181; Height v. State, 68 Texas Crim. Rep., 278, 150 S. W. Rep., 908; Creale v. State, 71 Texas Crim. Rep., 9, 158 S. W. Rep., 268; Himelfarb v. State, 76 Texas Crim. Rep., 173, 174 S. W. Rep., 586; Butler v. State, 49 Texas Crim. Rep., 159.

In this case appellant had been dealing with this merchant and other merchants in Fort Worth, getting goods to sell on commission under an agreement to return the identical goods if he did not succeed in selling them.  Under the State's testimony he obtained the goods in this instance on those terms, and after securing them he carried them out of the State and appropriated them to his own use.  Under our view of the law, and the facts of this case, this is the identical char-

acter of offense article 1348 was passed to punish, and which had theretofore been held to be no offense under our Code.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE (dissenting).—Appellant was convicted of theft by bailee. The indictment contains four counts, embezzlement of goods, embezzlement of money, theft by bailee of goods, and theft by bailee of money.

The facts show that appellant went to Fort Worth and engaged in peddling goods. He made a trade with a certain firm of merchants to furnish him money, or rather to pay for goods that he would ship to Fort Worth to be by him peddled and sold, and to hold such goods as their property subject to his taking them out and peddling them, for which he agreed to pay that firm ten per cent for their accommodation and advancement of money. He made a trade also with Corbett & Company, who had two stores, one of which stores was under the control of Gauntt, by which he was to take their goods at agreed prices and sell them, for which he was to be allowed fifteen per cent commission, with the right to return unsold goods. These goods were to be peddled, as before stated. This business continued between appellant and Corbett & Company for some time, appellant taking the goods on the contract terms as agreed between them. He received from Corbett & Company and sold goods as per agreement. Several transactions of this character occurred to the satisfaction of Corbett & Company.

The matter relied upon here is that Corbett & Company, through Gauntt, from the store he controlled, let appellant have goods upon the agreed terms to be sold that day, and if not sold to be returned, but if sold the money to be paid to Corbett & Company, or Gauntt, less the stipulated fifteen per cent commission.

· The witness Gauntt was the alleged bailor or principal. Gauntt testified that appellant came into his store early in the morning and received merchandise on previously stipulated terms. Specifically he says: "I did not sell him the stuff but let him have it to sell or bring back and I was to pay him a commission for selling, as I had done on previous transactions, of fifteen per cent. He was to keep fifteen per cent of the value of the goods and pay me the balance. He had taken out the same character of merchandise that way before. Mr. Lee had taken out goods two times in the two weeks prior to this transaction. *I sold the defendant goods out of the Popular Store from September 25th to October 16th on two or more different occasions.* I don't know whether Mr. Lee took the goods be bought from me to the Corbett store, but he may have. I did not sell the goods mentioned in the indictment to the defendant and never parted with title to them. He was eiher to return the goods or bring the money for them. Nothing particular was said about the understanding on this particular morning, as we had an understanding on two or three different occasions before

that.. On these occasions when he would take the goods out he said I ought to give him some commission, and I said how about ten per cent, and he said that he wanted fifteen per cent, that he got that everywhere else, and I said all right then will give you fifteen per cent, and *he took fifteen per cent off when he came to pay for the goods.*" Gauntt was the alleged owner.

Corbett testified: "He (appellant) saw a dress in the window and said he wanted it. I told him I did not want him to take the stuff out and had told my brother a few days before that I did not want to fool with him any more as *he wanted to buy stuff at a cut price,* and a few days before that told my brother not to let him have anything else."

Gauntt's testimony is a little peculiar in that he swears he sold goods to appellant from September 25th to October 16th, and then swears he did not sell the goods mentioned and never parted with the title to them; that appellant was to return all goods not sold, and bring money for those he did sell. The fact stated by him that he did not part title with the goods is a conclusion rather than a fact and unwarranted by Gauntt's testimony. It was a conditional sale, or rather a contract of sale, or return of goods. When he turned the goods over to defendant, under the facts, to sell, as he had previously done, it was a contract of sale. Defendant could sell and retain his fifteen per cent, or he could pay for the goods at the stipulated price less the fifteen per cent. The return of the goods was but incidental; the sale of the goods was the central thought and controlling proposition. They did not, of course, make a trade for defendant to simply take the goods, carry them around for exhibition, just to be returned. Corbett & Company looked to him to sell. They did not pay or agree to pay him fifteen per cent for exhibiting goods on the streets or in the reservation. Every fact excludes this idea. Appellant had sold and settled with them for the goods on divers occasions on the fifteen per cent commission sale basis. This was the end and purpose of the contract. Corbett & Co. or Gauntt could not have recovered the goods from purchasers under such conditions. Appellant had the authority to sell, and whether he sold or not would not change the proposition of his right to sell. The rule stated by the Supreme Court of the United States in Heryford v. Davis, 102 U. S., 235, may be reiterated as applicable here, so far as this character of contract is concerned and the intention of the parties. The rule there stated is as follows:

"What, then, is the true construction of the contract? The answer to this question is not to be found in any name which the parties may have given the instrument, and not alone to any particular provision it contains, disconnected from all others, but in the ruling intention of the parties, gathered from all the language they have used. It is the legal effect of the whole which is to be sought for. The form of the instrument is of little account. . . . It is quite unmeaning for parties to a contract to say that it shall not amount to a sale, when it contains every element of a sale and transmission of ownership." See

also Eason v. DeLong, 38 Texas Civ. App., 531, and 2 Texas unreported cases, 480. The DeLong case, supra, reviews our statute with reference to contracts of similar nature. I do not care to discuss the statute, but refer to the DeLong opinion. The contract here at issue was between parties capable of contracting, which had been acted on and carried out according to its terms in all previous transactions as contemplated. The right to sell carried necessarily the right to transfer title. This right inhered in the right to sell. It ought to be axiomatic that a party who has the right to sell has the legal right to transfer title. An agent clothed with authority to sell can sell and convey the title. This contract, therefore, is, from that viewpoint, not a bailment. A bailment carries, under the statute under which appellant was indicted, the idea of the return of the identical property. That statute does not contemplate the right of a bailee, if he be a bailee, to sell or alienate the property. The borrower or hirer is not authorized by such a contract to sell property of the owner. It is contemplated only that at the end of the borrowing or hiring contract the identical property shall be returned to its owner. There is no authority to sell, and the term "bailment," under that statute, should be given the same effect and construed with the same meaning as specified in the terms "borrowing" or "hiring." "A sale by a mere bailee can pass no property as against the true owner of the goods, even to a bona fide purchaser, but if the owner has conferred upon such bailee authority to sell the goods, a sale made pursuant to such authority will convey a good title to the buyer." 35 Cyc., 362-363, and notes. It may be said that where the agent has been authorized to sell he may pass title. Quoting from the same authority on page 363 we find: "So, also, where the agent has been authorized to sell, the title of a bona fide purchaser is not affected by the fact that the agent's authority has been revoked if the sale is made and the property delivered before notice of such revocation, or by the fact that the power of attorney under which the sale was made was procured by fraud; nor is the title of a bona fide purchaser affected by the fact that the agent subsequently embezzles the purchase money, or that by reason of his fraud or misconduct the owner of the property fails to receive the proceeds of the sale." That these transactions were treated as sales is clearly shown by the testimony of Corbett as well as that of Gauntt as heretofore quoted. Corbett says he told his brother not to sell appellant from the Corbett & Company store, because appellant wished to *buy,* or get *the goods at cut prices,* too low to suit him. This was a different business house from that controlled by Gauntt, though all owned by the same corporation. Gaunt treated his transactions as sales to appellant on stipulated conditions. It is said that, "In the case of a sale or return the property in the goods passes to the buyer at once subject only to a defeasance by a return of the goods," etc. 35 Cyc., 290. "If the buyer fails to return the goods within the time limited or within a reasonable time the sale becomes absolute." 35 Cyc., 290, and notes. Where goods are consigned at a

price certain, with a provision that the buyer may, if he fails to re-sell them, return them to the seller, the contract is one of sale with an option to rescind. 35 Cyc., 290, and note 19; 62 Neb., 77, 86 N. W. Rep., 906. See also 35 Cyc., 291, note 29, as to a consignment of goods for sale where the option to return unsold goods is held to be a sale. So with reference to credit sales. This may be fixed by contract as to definite time, or it may be uncertain in that respect, or where pay-ments are to be made as sales occur. 35 Cyc., 267. So it is held that "a contract of sale which provides that the buyer may return to the seller all of the goods that remain on hand at a stated time, has been termed a contract of sale or return." 35 Cyc., 253 to 254, and notes. Under such conditions there is a selling by stated terms. This is not a bailment. "Contracts of sale or return are to be distinguished from bailments in that there is no absolute obligation to return the identical thing, but the buyer may at his option pay the price." 35 Cyc., 254, and note 86 for cited cases. There is to be observed a difference be-tween bailments and conditional sales or sale or return or kindred con-ditions and stipulations. "The common test of bailment or sale is whether it is the intention of the parties that the thing delivered shall be returned. The transaction is a bailment if the identical thing is to be returned, although in altered form. If the receiver is not bound to return the identical things, but is at liberty to return something else, as a rule the property passes, and the transaction is in effect a sale or an exchange." 35 Cyc., 28 to 29, and notes for collated authorities. There was no contract here to return the identical goods except the unsold portion. But it was the purpose not to return the goods, but to sell, the return being only conditionally contemplated, and this was only as security to Corbett & Company, or Gauntt. Appellant could return the goods or not. He could return unsold part of the goods and pay for those he sold, retaining his commission. He could pay for the goods whether he sold or not. This would execute the full purpose of the contract. Failure to return required him to pay the price, whether it was a *cut price* or *not*. The return of the identical goods under the bailee's conversion statute was not in contemplation under this contract. Selling does not mean return of the identical goods, and could not. It means a disposition of the goods and change of the goods into money or its equivalent. It means the payment of the selling price less the commission. The statute of theft by conversion means return of the identical goods loaned, borrowed or bailed. It does not mean return of something else in place of the borrowed, hired or bailed property.

An inspection of the law of theft by conversion shows it was not intended to infringe either the law of theft or embezzlement. Statutes with reference to embezzlement and the general law of theft, and espe-cially where the goods are obtained by false pretext, are well known and understood. The statute under consideration here was specifically enacted to cover a missing link or hiatus where parties under whatever the contract may be termed borrowed or hired property and failed to

return the identical property. The embezzlement statute covers the ordinary fiduciary relations between the parties. The general law of theft by false pretext contemplated that the party had deceived the owner of the goods and obtained them fraudulently with the existing purpose of converting same to his own use. This statute was based upon the theory that the party obtained the goods by hiring, borrowing, etc., from the owner originally for the purpose of using it, and subsequently conceived and executed the fraudulent intent to appropriate. This did not carry the fiduciary relation with it that embezzlement does, nor false pretext as in theft. It was based upon the idea that both propositions were absent when the property was obtained, and that the intent to convert was formed subsequently or after obtaining possession. Since the case of White v. State, 11 Texas, 769, trouble has arisen over the fact that parties obtaining goods legally and subsequently converting them could not be punished. This statute was enacted to cover such cases. Before its enactment neither the law of embezzlement nor that of theft applied to such cases. To cover this hiatus the statute of conversion was enacted. It was not intended to infringe the other statutes, and the court should not so construe it, but on the other hand should so construe it as to avoid a conflict or apparent conflict, and thus uphold all the statutes. The Legislature evidently did not intend to repeal the embezzlement and theft statutes, nor to infringe those. This statute was enacted expressly to cover what neither of those statutes did cover. It was not intended to repeal them. It was a new statute to cover matters other statutes did not cover. The statutes ought to be construed so as to be upheld, and can be under this view. There is no reason why there should be a conflict, and can legally only be by court construction. They can all stand and fill the intent and purpose for which each was enacted. There is another rule to the effect that where particular matters in the statute are enumerated and are followed by a general statement, the general statement will be taken to harmonize in purpose and intent with the particular enumerations, and refer to and include matters of a similar character, and in this particular case the criterion of the statute is "borrowing" or "hiring" with intent to return the identical property. Ejusdem generis is what the books denominate or call this rule. This rule is not unfamiliar to the courts or to the profession. Construing these three statutes we look to the reason and the purpose of their creation and enactment and why the statute with reference to theft by bailee was enacted. Applying these rules to this particular statute, we find that it provides a punishment where the party becomes possessed of property by reason of "borrowing," "hiring" or "other bailment." Here the term "bailment" follows the particular words "borrowing" or "hiring." According to the rules mentioned, the general term "bailment" should be held to harmonize with the particular terms "borrowing" or "hiring" already mentioned. That rule being applicable here, the statute was intended to cover those things obtained to be returned

in kind to the owner as under the idea of hiring or borrowing.  In such case there will be no parting of title, nor any purpose to part with title or granting authority to divest title out of the owner.  The question of borrowing or hiring both contemplate that at the end of the contract the identical thing borrowed or hired is to be returned.  It does not carry with it the idea that the borrower or hirer can dispose of the property or change its identity and thus return it.  Nor is a condition subsequent to be found in a contract of borrowing or hiring by which a party may sell; if such be the case it ceases to come within the purview of the borrowing or hiring by bailee statute.  If the party lending authorizes the party who borrows or hires to sell and dispose of the property on agreed terms, it ceases to be a hiring or borrowing under this statute.  It then comes within the rule that the party had a right to sell or return the property itself, and in that character of case the borrowing or hiring is merged into a different contract, and is termed "a sale or return of the property."  Where the owner turns over property to a party to be by him sold on terms stipulated by the contract, the theft by bailment statute should not and could not be held to apply.  It was not intended to cover such cases.  The right to sell recognized the right to pass the property and transfer the title.  Thus construed, there ought to be no conflict between these statutory offenses.  Viewing this case from the testimony of the State's side only, here was a contract by which appellant received goods at stipulated prices, or as some of the witnesses call it, cut prices, which were to be taken out by him and sold, and for which he was to receive a commission of fifteen per cent for the goods sold; the unsold goods to be returned.  There is no question but what the purchaser would get title.  It may be said further this was not only a transfer of the title to appellant or right in him to transfer title, but it was a contract that he could meet in several ways.  He could sell the goods and pay the money; he could fail to sell the goods and return them, or he could sell part and not sell the others and pay for the unsold, or pay for all the goods and retain his commission, or he could retain all the goods at the price mentioned less his fifteen per cent.  But in any event it was not contemplated that he should return the identical goods.  If so his contract to go out and sell the goods for the money and return that to the owners was worse than foolishness.  They had and were the owners of the goods already; they need not have entrusted them to appellant to sell if they did not purpose he should sell.  It would be difficult to explain upon rules of sanity that appellant was entrusted only to take the goods to exhibit or advertise and then return to Gauntt.  They all testified whenever goods were received by appellant he had the authority to sell, and, therefore, transfer the property.  No question would be made, if he had not returned the money or the goods, that he would be responsible for having failed to comply with his contract, and it would be upon the ground that they had sold him the goods.

The defendant's side of the case was that the transaction was a credit

sale. If the jury believed this he was entitled to an acquittal. But it occurs to me the State's case is a sale of the goods with the condition to return the unsold portion. This also was in the nature and partook of the character of credit sales. I have tried to state as strong as it should be the State's case; or at least just as the State's witnesses place it in their testimony. There was no borrowing; there could be no hiring, but it was a sale to appellant with a right to return, holding him responsible for the goods. If it was a bailment under the statute of theft by conversion, the property would have been required to be returned in the shape that it was turned over to him. In other words, the identical property would have been required to be returned. For these reasons the writer is of the opinion that appellant is not guilty under the statute with reference to theft by conversion. He should have been acquitted.

The above was written as the opinion of the court, but my brethren, disagreeing with it, write as they have written affirming. I dissent and adopt what I wrote reversing so as to present some of my views for dissenting.

### ON REHEARING.

#### March 28, 1917.

MORROW, JUDGE.—This case was affirmed at a former day of this term. There was a written dissenting opinion. It is now before the court on appellant's motion for rehearing.

The facts are sufficiently stated in the opinions mentioned and will not be repeated. The principal question is, *whether or not the facts will sustain a conviction of theft by bailee.*

The statute on which the prosecution is founded is article 1348, P. C., as follows: "Any person having possession of personal property of another by virtue of a contract of hiring or borrowing, or other bailment, who shall, without the consent of the owner, fraudulently convert such property to his own use with intent to deprive the owner of the value of the same, shall be guilty of theft, and shall be punished as prescribed in the Penal Code for theft of like property."

The contention of the prosecution is that appellant was a bailee, holding goods for sale on commission, and that of the appellant is that he was a purchaser of the goods with the right to return them. Under appropriate definitions of sale and bailment the issue was submitted to the jury. Appellant earnestly insists in an able brief and argument that neither a court nor jury would be authorized under the evidence to determine that appellant was a bailee, citing among others note 86, vol. 35, Cyc., p. 254; also pp. 289-290 of the same volume; Bank v. Kraus, 86 N. W. Rep., 906, 62 Neb., 77, and Hunt v. Wyman, 100 Mass., 198; State v. Betts, 106 S. W. Rep., 64 (Mo.)

From the opinion in the last named case appellant in his brief quotes

as follows: "The general proposition that a delivery of an article at a certain price, to be paid for or returned, constitutes a sale is not questioned. When the option is with the party receiving to pay for or return the goods received, the uniform current of authorities is that such alternative agreement is a sale (citing authorities). The class of contracts known as contracts of 'sale or return' exists where the privilege of 'purchase or return' is not dependent upon the character or quality of the property sold, but rests entirely on the option of the purchaser to retain or return. In this class of cases the title passes to the purchaser subject to his option to return the property within a time specified or a reasonable time, and if before the expiration of such time or exercise of option given the property is destroyed, even by inevitable accident, the buyer is responsible for the price."

The case from which appellant takes this quotation is a criminal case in which it was held by the court that the receiver of the goods in question was a bailee, and his conviction for fraudulently converting them was sustained, and from the same case we take the following quotation: "It will be seen from this definition that bailment need not always contemplate a redelivery of the goods to the bailor. In many cases when personal property is bailed by the owner to another it becomes of great importance to determine whether the title to the property had been transferred or not, and the facts in the case, construed in the light of the law, must determine whether the transaction is a sale or a bailment."

The definition of bailment given by Story in his work on bailment, 9th ed., page 5, is as follows: "It may be said that a bailment is a delivery of a thing in trust for some special object or purpose and upon a contract expressed or implied to conform to the object or purpose of the trust." And he says further: "According to both Lord Holt and Sir William Jones, a consignment to a factor for sale falls within the meaning of the term bailment; and, indeed, it is difficult to perceive why it should not, if a bailment be a delivery for some special purpose." The same author from authorities cited by him states the following rule: "So, receiving goods from another upon an agreement to sell and account for them to the owner or to return them as good as when taken, with interest, has been held to be a bailment and not a sale." To the same effect is Lawson on Bailments, note, pp. 9-10.

The 35th volume of Cyc., 254, discussing the distinction between a sale and a bailment, quotes from a note in the case of Sturm v. Boker, 150 U. S., 312, 37 L. Ed., 1093, the following: "A consignment of goods to the 'care' of another, to be shipped to a foreign county and there sold to the best advantage, any loss resulting from sale below invoice price to be borne by the consignors, and profits in excess to be equally divided, and consignee to bear expense of shipment and to return free of charge any goods not sold is not a contract of sale or return but a bailment." And the text of 35 Cyc., p. 290, discussing the various subdivisions of bailments, draws a distinction between a sale.

or return of goods and a consignment for sale, using the following language: "Ordinarily where goods are consigned by one person to another for sale by the latter, the title thereto remains in the consignor; but whether the consignee is to be considered as a buyer or an agent depends upon the intention of the parties, and upon the real nature of the transaction rather than the language which the parties may have employed."

The case of Hunt v. Wyman, 100 Mass., 198, involved the question as to whether the contract under which a horse was delivered was a sale or bailment, and it was held to be a bailment.

In the case of Luddich v. American Co., 231 U. S., 522, 58 L. Ed., 345, where the question was whether a contract for the sale of goods on commission was a bailment or a sale, it was held a bailment in the following language: "We find that the agreement was really one of bailment for the purpose of sale with the right to return the unsold goods."

The Delaware case of State v. Brewington was a criminal case in which a conviction was sustained where the defendant was given money to have changed. The court says: "A bailment in such a case consists in the delivery of some personal property, the subject of larceny, by one person to another to be by him held or handled according to the purpose of the delivery upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who first delivered it or be otherwise dealt with according to his direction."

The case of Packard v. Wilson, 151 S. W. Rep., 211, is one in which the Supreme Court of Missouri again considered the distinction between a contract involving a sale or bailment, the particular contract being one in which goods were consigned for sale, and the conclusion reached was that the contract evidenced a bailment and not a sale.

In the Pennsylvania case of McCullough v. Porter, 39 Am. Dec., 68, the following language is used: "Were I to put my horse into the custody of a friend to be sold for a designated sum with permission to retain whatever should be got beyond it, it would not be expected that I had ceased to own him in the meantime or that my friend would not be bound to return him even without a stipulation should he have failed to obtain the prescribed price."

The case of Fleet v. Hertz (Ill.), 66 N. E. Rep., 858, passed upon a contract in which goods were delivered with a stipulation as follows: "which you agree to handle upon my account and hold the proceeds in trust, making settlement within 30, 60 or 90 days, as soon as the money may be collected," and it was held to constitute a bailment and not a sale of the goods.

In the Missouri case of Wilson v. Briebe, 100 S. W. Rep., 558, in passing upon a contract where goods were delivered with a stipulation that they might be sold by the receiver, unsold portions to be held subject to the order of the furnisher, it was held to be a bailment, the court using the following language: "The fact that such a contract

provides that the difference between the agreed prices of the accounting and sale prices is to recompense him for the insurance, storage, commission and expenses does not constitute the contract an agreement of sale. It still lacks the obligation of the receiver to pay a purchase price for the goods and the obligation of the furnisher to transfer the title to him for that price."

Other cases to the same effect as those above mentioned are Lenz v. Harrison, 36 N. E. Rep., 567; Peet v. Spencer, 2 S. W. Rep., 334; Aetna v. Hildebrand, 45 Am. St. Rep., 194, and note.

In the case of Columbus Buggy Co., decided by the Federal Circuit Court of Appeals March 2, 1906, reported in 143 Fed. Rep., 859, that court passed upon the question and cited authorities, and from the decision we take the following quotation: "A contract between a furnisher of goods and the receiver that the latter may sell them at such prices as he chooses, that he will account and pay for the goods sold at agreed prices, that he will bear the expense of insurance, freight, storage and handling and that he will hold the unsold merchandise subject to the order of the furnisher discloses a bailment for sale and does not evidence a conditional sale. It contains no agreement of the receiver to pay any agreed price for the goods. It is not, therefore, affected by a statute which renders unrecorded contracts for conditional sales voidable by creditors and purchasers. The fact that such a contract provides that the receiver of the goods may fix the selling prices and may retain the difference between the agreed prices of the accounting and selling prices to recompense him for insurance, storage, commission and expenses does not constitute the contract an agreement of sale. It still lacks the obligation of the receiver to pay a purchase price for the goods and the obligation of the furnisher to transfer the title to him for that price. Sturm v. Boker, 150 U. S., 312, 14 Sup. Ct., 99, 37 L. Ed., 1093; John Deere Plow Co. v. McDavid (C. C. P.), 137 Fed. Rep., 802; Metropolitan Nat. Bank v. Benedict Co., 20 C. C. A., 377, 380, 74 Fed. Rep., 182, 185; In re Galt, 56 C. C. A., 470, 473, 120 Fed. Rep., 64, 67; Union Stock Yards, etc., Co. v. Western Land, etc., Co., 7 C. C. A., 660, 664, 59 Fed. Rep., 49, 53; Keystone Watch Case Co. v. Fourth National Bank, 194 Pa., 535, 45 Atl. Rep., 328; In re Flanders, 67 C. C. A., 484, 134 Fed. Rep., 560; Martin v. Stratton-White Co., 1 Ind. T., 394, 37 S. W. Rep., 833; National Bank v. Goodyear, 90 Ga., 711, 726, 16 S. W. Rep., 962; Barnes Safe & Lock Co. v. Bloch Bros. Tobacco Co., 38 W. Va., 158, 164, 18 S. W. Rep., 482, 22 L. R. A., 850, 45 Am. St. Rep., 846; National Cordage Co. v. Sims, 44 Neb., 148, 153, 62 N. W. Rep., 514; Rosencranz & Weber Co. v. Hanchett, 30 Ill. App., 283, 286; Harris v. Coe, 71 Conn., 157, 41 Atl. Rep., 552, 554; W. O. Dean Co., v. Lombard, 61 Ill. App., 94, 97; Horton & Co. v. Melick, 97 Iowa, 564, 566, 66 N. W. Rep., 780; Lenz v. Harrison, 148 Ill., 598, 36 N. E. Rep., 567, 569."

A number of Texas cases dealing with the subject and construing the statute in question are cited in the original opinion in this case.

Among them is the case of Himmelfarb v. State, 76 Texas Crim. Rep., 173, 174 S. W. Rep., 586, in which, in a unanimous opinion, it was held that money delivered to the appellant with instructions to use it for a particular purpose and which he converted constituted him a bailee within the terms of this statute, and his conviction of theft by bailee was sustained.

It is suggested that under the rule of ejusdem generis a bailment for the purpose of sale would not come within the terms of article 1348, P. C., for the reason that under that rule only bailments similar in character to hiring and borrowing would be included. The application of this rule in a proper case has been frequently declared to be binding upon this court. Roquemore v. State, 59 Texas Crim. Rep., 568; Muckenfuss v. State, 55 Texas Crim. Rep., 216. Analyzing this contention, we find that bailments are divided by the text-writers into three classes: (1) Those for the benefit of the bailor or a third person; (2) those for the benefit of the bailee; and (3) those for the mutual benefit of the bailor and bailee or one of them and a third party. Story on Bailments, 9th Ed., p. 7. A consignment of goods for sale, as we have tried to show, is a bailment. The statute uses the terms "contract of hiring or borrowing or other bailment." A contract of hiring is for the benefit of both the bailor and the bailee. That a consignment would come within the same classification, that is, be classified for the benefit of both the bailor and the bailee, seems clear, and this being true, under the rule of ejusdem generis, the term "other bailment" would include a bailment for sale.

It would seem, however, that the decisions of this court cited in the original opinion and in Branch's Ann. P. C., sec. 2524, would set this question at rest. From one of these, Malz v. State, 36 Texas Crim. Rep., 447, in which Henderson, judge, delivered the unanimous opinion of the court, we take the following quotation:

"The contention of the appellant is that the indictment—which in this case alleges, among other things, a pledge or pawn, and which the proof establishes—is not covered by the statute; that is, that the statute specifies a hiring or borrowing, and the expression 'or other bailment' does not include other offenses, where the property may be in the hands of a bailee and converted, because the statute does not define the term 'bailment,' and our law requires all offenses to be defined before a conviction can be sustained, there being no offenses outside of our statute. In other words, the contention is that the word 'bailment' should be specifically defined; that is, that all characters of bailment should be specified. While it is true there are a number of different sorts of bailments, which are ordinarily classed into deposits, mandates, gratuitous loans, bailments for hire, and pledges or pawns, still each of said kinds of bailment is of the same general character, and is defined 'to be a delivery of personal property to another, for some purpose, upon a contract, express or implied, that such purpose shall be carried out.' See Fulcher v. State, 32 Texas Crim. Rep., 621, citing 2 Bl. Comm.,

451; Jones, Bailm., 117, and Story, Bailm., sec. 2. In 2 Am. & Eng. Ency. of Law, p. 40, 'bailment' is defined as follows: 'A transfer of the possession of personal property from one person to another, without a transfer of the ownership of it.' These are standard definitions of the term, and are well understood, and there can be no difficulty about the meaning of the term 'bailment.' It is so plain that we apprehend that no person who receives the possession merely of any character of personal property in trust, upon some contract, express or implied, that the trust shall be performed in regard thereto, but knows that the said property is received in bailment, is not his own and is to be restored to the owner after the trust has been performed, no matter what the character of the trust may be. Indeed, under our statutes with reference to embezzlements, no question has ever been made with reference to the term 'bailee,' as used in said statute, and it has been uniformly held that such term was sufficiently defined. Nor does the omission of one character of bailment, as a hiring or borrowing, restrict the meaning of the more comprehensive term 'bailment.' It was a canon in the construction of criminal laws, under the common-law system, that penal statutes must be construed strictly. But our statutes authorize a liberal construction for the prevention, suppression, and punishment of crime. See Code Crim. Proc., 1895, art. 25. It is further provided 'that this Code, and every other law upon the subject of crime which may be enacted, shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects. And no person shall be punished for an offense which is not made penal by the plain import of the words of the law.' See Penal Code, 1895, art. 9. 'Words which have their meaning specially defined shall be understood in that sense, though it be contrary to their usual meaning, and all words used in this Code, except where the word, term, or phrase is specially defined, are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and subject matter relative to which they are employed.' Id., art. 10. Holding, as we do, that the term 'bailment' has a well understood meaning, there was no necessity to further define the same in article 877, Penal Code."

It is insisted, however, that under the terms of article 5654, Revised Statutes, as construed in the case of Eason v. DeLong, 38 Texas Civ. App., 531, 86 S. W. Rep., 347, the contract in this case is declared by statute to constitute a sale and not a bailment. Article 5654 is as follows: "All reservation of the title to or property in chattels, as security for the purchase money thereof, shall be held to be chattel mortgages, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages; provided, that nothing in this law shall be construed to contravene the

landlord and tenant act." · This statute has uniformly been held to be for the benefit of lien creditors and bona fide purchasers.

The case of Eason v. DeLong, cited by appellant, was one in which a controversy arose between one who undertook to reserve the title to personal property which had been delivered to a third party and one who held a mortgage upon the property executed by the third party while it was in his possession. It was held that the reservation of title being unrecorded, the mortgagee being a lien creditor was entitled under the statute to a superior right.

The reservation of title as between the parties and against those who were not subsequent bona fide purchasers or lienholders, as we understand, been uniformly held effective. The Supreme Court in the case of Bowen v. Wagon Works, 92 Texas, 384, so holds. To the same effect are Phillips v. Parker, 30 S. W. Rep., 365; Mauser v. Tibbetts, 19 Texas Civ. App., 311, 45 S. W. Rep., 972; Turner v. Cochran, 94 Texas, 480; Hall v. Keating, 33 Texas Civ. App., 536, 77 S. W. Rep., 1054; Cameron v. Jones, 41 Texas Civ. App., 4, 90 S. W. Rep., 1129; Stewart v. Miller, 144 S. W. Rep., 343.

Our understanding of the civil statute in question from the construction given it by the Supreme Court is that it was not intended to and does not affect the contract between the original parties, except in cases where giving effect to such contract would operate to the disadvantage of creditors and bona fide purchasers, and the present case, not being one in which their rights are involved, is one in which that statute does not operate on the contract, and the contract being one in which the jury was authorized to determine that the appellant was a bailee and having so determined under appropriate instructions, the motion for rehearing should be overruled, and it is so ordered.

*Overruled.*