JOHN L. ALLEN v. STATE

No. 28,912. April 3, 1957.
Appellant's Motion for Rehearing Overruled
(Without Written Opinion) May 22, 1957.

*Joe Shannon* and *Jack Love (Joe Shannon,* of Counsel), Fort Worth, for appellant.

*Howard M. Fender,* Criminal District Attorney, *H. Edward Johnson, Conard Florence* and *Robert F. Fick, Jr.,* Assistants Criminal District Attorney, Fort Worth, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is theft by bailee of property of the value of over $50; the punishment, two years.

J. W. Hancock and his wife answered an ad in the classified section of the Star Telegram and contacted one J. L. Liles about

the purchase of a washateria or laundry. Hancock was directed to contact appellant and as a result of the conferences with him agreed to purchase the business for $7879.00.

A "proposition" was signed by Hancock on July 16, 1956, under which he agreed that the $1500 which he delivered to appellant as earnest money and "the assumption and agreement to pay an amount of $6,379.00 payable over a period of three years, minimum payment of $125.00 monthly" should, if his offer to purchase was accepted, constitute the consideration. But in the event the "proposition" was rejected or if not accepted by the seller on or before July 19, 1956, the earnest money was to be refunded.

The "proposition" further provided that if accepted and the purchaser failed or refused to consummate the purchase, the earnest money would be retained as liquidated damages for breach of the contract.

Appellant received and thereafter cashed the $1500 cashier's check delivered to him by Hancock.

Levi Talbott testified that he sold the washateria in question to appellant on credit and in connection with the sale acquired a mortgage on the equipment. He testified further that the North Fort Worth State Bank already had a mortgage on the equipment which was to secure an indebtedness of $5600. At the time of the trial Talbott had repossessed the property and the bank's mortgage had been reduced to $3025.

James Liles testified that he purchased the washateria and paid $1000 as down payment, but was never quite sure whether he was buying through appellant or from Talbott and that he made payments of $125.00 a month on the balance of $6500 he owed for the property.

Liles further testified that he had no knowledge of any claim against the property which the bank had until after Mr. Hancock contacted him and agreed to purchase; that he saw the $1500 check which Mr. Hancock gave to appellant but he got none of the proceeds; that the washateria belonged to him and he took Mr. Hancock to Mr. Allen for them to arrange for the payment of the balance that would be owing and satisfy Mr. Talbott and the $1500 down payment he told Mr. Hancock he wanted for his equity.

There is nothing in the record to show that Hancock defaulted in any way so as to forfeit the $1500 as liquidated damages under his "proposition."

The evidence shows, on the other hand, that appellant was unable to deliver the property free from incumbrance except for the amount which Hancock agreed to assume and pay at the rate of $125; that he sought to alter the terms of the "proposition," remove the mortgaged equipment and obtain other similar equipment, and after Hancock had declined such suggestion appellant cashed the $1500 cashier's check placed with him as earnest money, and appropriated the $1500 to his own use.

Appellant did not testify and offered no witness in his behalf.

Formal Bill of Exception No. 2 complains of the sustaining of the state's objection to the introduction of his Exhibit 2 which is set out in the bill and appears to be an unsigned bill of sale to the business and equipment from Texas Business Investments Company to J. W. Hancock, dated July 20, 1956.

The bill shows that Exhibit No. 2 was offered "in open court in a whispered conference between the court, the state's attorney and the defendant's attorney," and the court in his qualification to the bill declined to certify that the instrument set out in the bill was the bill of sale mentioned in the statement of facts.

The statement of facts reveals that a bill of sale was exhibited to the injured party Hancock on cross-examination in which Hancock testified there was listed substantially the equipment that he and appellant had dealings about, but the witness denied ever having seen the bill of sale and the court sustained the state's objection to its introduction. According to the statement of facts this bill of sale was identified by the reporter as Defendant's Exhibit No. 1, which is attached to the statement of facts and appears to be an unsigned chattel mortgage dated March 29, 1956, from Texas Business Investments Company in favor of Levi Talbott to secure an indebtedness of $5800, and recites that the mortgage is subject to any interest or mortgage the North Ft. Worth State Bank may have.

In the state of the record neither the formal nor the informal bill of exception reveals error calling for reversal.

It is contended that there is not sufficient evidence to sup-

port a finding by the jury that appellant had possession of the $1500 by virtue of a bailment.

A bailment has been defined to be a delivery of personal property to another for some purpose upon a contract, either expressed or implied, that such purpose shall be carried out. Fulcher v. State, 32 Texas Cr. Rep. 621, 25 S.W. 625; Lee v. State, 81 Texas Cr. Rep. 117, 193 S.W. 313; Branch's Ann. P.C., 2d Ed., Sec. 2713.

Under the evidence appellant received the $1500 with the agreement that under certain circumstances it would constitute a part of the consideration for the washateria, while under other circumstances it would be returned to Mr. Hancock. This we hold to be a bailment under the terms of Art. 1429 P.C. and the above definition.

The evidence is sufficient to sustain the jury's verdict and we find no reversible error.

The judgment is affirmed.