## W. F. FULCHER v. THE STATE.

*No. 429.  Decided March 10.*

1. **Conversion by Bailee — Theft.** — Article 742a, Penal Code, provides that " any person having possession of personal property of another by virtue of a contract of hiring or borrowing, or other bailment, who shall without the consent of the owner fraudulently convert such property to his own use, with intent to deprive the owner of the value of the same, shall be guilty of theft," etc.

2. **Bailment, Definition of.**—A bailment is a delivery of personal property to another for some purpose, upon a contract, express or implied, that such purpose shall be carried out.

3. **Same — Money Paid by Mistake.** — On a trial for theft by a bailee, where it appeared that the theft consisted in the fraudulent appropriation of money overpaid the accused on a draft by the cashier of a bank, through mistake, *held*, that there was no bailment, there being no intention on the part of the

cashier to deliver the money to the accused for any purpose, and a conviction under the provisions of article 742a could not be maintained.

4. **Theft of Money Paid Through Mistake.**—Under article 727 of the Penal Code, a party could be convicted of *theft* of money which had been paid him by mistake, if at the time he received it he formed the criminal design to appropriate it, and did so appropriate it. But in such case he would be guilty of theft, and not of a fraudulent conversion as bailee.

APPEAL from the District Court of Midland. Tried below before Hon. WILLIAM KENNEDY.

The indictment in this case contained two counts; one for theft of $500, and the other for the fraudulent conversion of said $500, acquired by virtue of a contract of bailment. The first count for theft was dismissed, and defendant was tried and convicted upon the second count for the fraudulent conversion as a bailee, his punishment being assessed at two years imprisonment in the penitentiary.

The facts proved by the State are sufficiently stated in the following testimony of W. E. Connell, who testified: I am and was on the 4th day of December, 1893, cashier of the First National Bank of Midland County, Texas. I saw defendant, W. F. Fulcher, on that day when defendant, in company with Arch Parker, presented for payment a check for the sum of $569, drawn on said bank by T. J. Mullinix (which check witness identifies as the one here offered in evidence by the State). In paying said check, I opened a package of money received by express that morning, and took a package of bills enclosed by a rubber band out of said express package. I supposed said package contained $500. I did not count said money, but counted the bills before I handed the said package to defendant. I remember that said package handed to defendant had two $50 bills in it, but do not remember the denomination of the other bills in said package. If I paid defendant more money than his check called for, it was paid by mistake. I saw defendant count part of the money paid to him, and leave the bank.

It was about 10 o'clock in the morning when I paid this money to defendant. The package of money received by express that morning purported to come from the City National Bank of Dallas, Texas. There were two or three wax seals on said package, bearing the stamp of the City National Bank of Dallas, Texas, and said seals appeared to be unbroken. Said package was brought to the bank that morning by W. D. Watts, assistant cashier, and was not opened by me when I paid defendant. Said package purported to contain $3000, but was not counted until about 1 o'clock in the afternoon of that day, and when counted contained only $2000.

As soon as I found said package contained only $2000, I got Ed Townsend and went with him in a buggy in search of defendant, going west of Midland to where T. J. Mullinix was holding cattle, supposing I would

find defendant there, but upon arriving there I found that defendant had gone to Stanton, and I, in company with Ed Townsend, followed defendant to Stanton. Upon the way to Stanton we met a Mr. Glasscock, and made inquiries of him about defendant, and Mr. Glasscock told us he thought we would find defendant at his (Glasscock's) ranch, about four miles south of Stanton, in Martin County. We went to Glasscock's house, but not finding defendant there, went on to Stanton, arriving there about sundown, and found that defendant and Parker were there at the hotel, and had gone to bed. We, in company with Al Garrett and Henry Harding, went to defendant's and Parker's room, upstairs, and I told defendant that I had paid him $500 too much money, and wanted defendant to count his money in our presence, which defendant refused to do, stating that he had left the money at Glasscock's ranch. I told defendant we had just come from Glasscock's ranch, and he had not left any money there. Defendant then said he had paid out part of the money and had left the balance of the money with a saloon keeper in Midland, Texas.

Defendant never denied that he had received more money than was due him, nor did he admit it; but said he had on receiving said money at the bank counted same until he saw he had enough, and then quit. The money was current money of the United States, and of the value of $500, and was paid defendant in Midland County, Texas, December 4, 1893.

The express package containing this money was placed by W. D. Watkins in a drawer to the left of the regular money drawer and to the left of the cashier's window. I took no money from said package except that paid to defendant. I was present in the bank the morning of December 4, 1893, from the time the money was received from the express office until I went to dinner at noon, and then I left W. D. Watkins in charge of the bank. I did not see any one else take any money out of said package. No one had access to the money except myself, W. D. Watts, and George Elliott. I had exclusive custody, control, and management of said money herein before mentioned. When I paid the money to defendant I saw no one else with him but Arch Parker. Defendant and Arch Parker were strangers to me, and I had never seen them before the time I paid the check. I paid the defendant $69 out of the cash drawer in addition to the package of money referred to by me. The defendant first told me that he did not know whether he had the money or not, and he objected to counting it. I told him Sheriff Garrett and County Clerk Harding were present, and he was in no danger. He said he feared he would be robbed. I usually counted money by counting the number of bills. On December 2, 1893, I wired the City National Bank of Dallas, Texas, to send me $3000 in currency.

*F. G. Thurmond*, for appellant.

*R. L. Henry*, Assistant Attorney-General, for the State.

SIMKINS, JUDGE.—Appellant was convicted of a fraudulent conversion of money paid to him by mistake, and his punishment assessed at two years in the penitentiary.

The only question in the case is whether the offense charged against appellant is within the purview of article 742a of the Penal Code.

In this case the cashier of the First National Bank of Midland County, by mistake, paid to appellant $500 more than his check on that bank called for, which was converted by appellant to his own use.

Article 742a declares, that any person having possession of personal property of another by virtue of a contract of hiring or borrowing or other bailment, who shall, without consent of the owner, fraudulently convert such property to his own use, with the intent to deprive the owner of the value of the same, shall be guilty of theft.

The indictment contained two counts; one for theft of money, which was dismissed; the other count alleges, that appellant did then and there obtain and acquire from W. E. Connell the possession and custody of $500, current money of the United States, the property of said Connell, by virtue of a contract of bailment, in this, that the said W. E. Connell did then and there pay said money aforesaid to the said W. F. Fulcher by mistake, who, while in possession of said money by virtue of said bailment, did then and there fraudulently convert and appropriate said money to his own use, with intent, etc.

Did the payment of this money by mistake to appellant make him a bailee?

A bailment may be defined as a delivery of personal property to another for some purpose, upon a contract, expressed or implied, that such purpose shall be carried out. 2 Black. Com., 451; Jones on Bail., 117; Story on Bail., sec. 2.

Money paid by mistake, as in the case at bar, can not be held, under the above definition, to be a bailment. There was no intent on the part of the cashier, Connell, to deliver the money, to-wit, the said $500, to appellant for any purpose.

If, however, at the time appellant received the property, he formed the criminal design to appropriate it to his own use, and did so appropriate it, it would be theft. Article 727, Penal Code.

In Rex v. Middleton, 2 C. C. R., 38, where A gives a cabman a sovereign by mistake, thinking it was a shilling, and it was kept by the cabman, it was held by the court, eight judges concurring, to be larceny. Whart. Crim. Ev., 915.

In this case the State dismissed the count for theft and relied upon the count of conversion by a bailee.

We think the court erred in permitting a conviction under the bailment count, under article 742a.    This was error.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.