International & Great Northern Railway Company v. Roy Elder.

Decided January 5, 1907.

**1.—Removal of Causes—Statute Construed.**

A suit against a railroad company for personal injuries caused by the failure of the railway company to properly equip its trains with automatic couplers, does not necessarily import a reliance upon the Act of Congress of March 3, 1875, requiring railway companies to equip their cars with automatic couplers. A failure so to do may constitute negligence under the general principles of law concerning master and servant, and therefore such a suit does not necessarily arise under the Constitution or laws of the United States, and for that reason be removable to the Federal Court.

**2.—Same.**

The Act of March 3, 1875 (U. S. Compiled Statutes, vol. 3, p. 3174), requiring railway companies to properly equip their cars with automatic couplers, applies only to common carriers engaged in interstate commerce, and a petition for removal of a suit from a State to a Federal Court on the ground that the suit is based upon said statute, should affirmatively show that fact.

**3.—Railroad Corporation—Venue—Residence.**

Under the Act of the 27th Legislature, chapter 27, page 31, requiring all suits against railroad corporations for personal injuries to be brought in the county in which the injury occurred or in the county of plaintiff's residence at the time of the injury, a charge which defined residence as "a fixed and permanent abode or dwelling place for the time being, as contradistinguished from a temporary locality of existence," approved.

**4.—Master and Servant—Safe Place and Appliance.**

Where a switchman, while endeavoring to make a coupling, was injured by the combined effects of a slippery track (the risk of which he assumed) and a defective coupler (the risk of which he did not assume) the court properly charged the jury, in effect, that the fact that plaintiff assumed the risk of the defective track would not relieve defendant from liability for the defective coupling.

Appeal from the District Court of Tarrant County. Tried below before Hon. Irby Dunklin.

*N. A. Stedman, John M. King* and *Spoonts, Thompson & Barwise,* for appellant.—The court erred in refusing to grant the motion and petition of this defendant to remove this cause to the Second Court of the United States for the Northern District of Texas, at Fort Worth, Texas, according to the petition and prayer for removal filed in this cause by this defendant, which prayer was overruled and denied by this court. Act of Congress, 1893, approved March 2, 1893, 27 Stat., 531; Act of Congress, March 3, 1887, ch. 373, as corrected by Act of August 13, 1888, ch. 866; Cooke v. Avery, 147 U. S., 385; Southern Pac. Ry. Co. v. California, 118 U. S., 112; Railway Company v. Mississippi, 102 U. S., 135; Ames v. Kansas, 111 U. S., 449; St. Paul Ry. Co. v. Railway Company, 68 Fed. Rep., 2.

Under the facts established by the evidence the legal definition of the term "residence" as given by the court was erroneous, misleading and confusing to the jury.

The court erred in refusing to give special charge number 3, requested by this defendant. Gulf, C. & S. F. Ry. Co. v. Rogers, 82 S. W. Rep., 822; Middlebury v. Waltham, 6 Vt., 200; Frost v. Brisbin, 19 Wend., 11; 24 Am. and Eng. Ency. Law, 694.

In determining the question of negligence with reference to the coupler the jury were directed to take into consideration the track at the place of the injury as same was constructed and the condition they may have believed same was at the time of the injury. The condition of the track and premises had no relation to the question as to the negligence of the company in the character of coupler furnished, and the jury should not have had their attention called to same. Missouri, K. & T. Ry. Co. v. McGlamory. 89 Texas, 636; Missouri, K. & T. Ry. Co. v. Rogers, 91 Texas, 52; Gulf, C. & S. F. Ry. Co. v. Mangham, 95 Texas, 413; Galveston, H. & S. A. Ry. Co. v. Washington, 94 Texas, 510.

*Capps & Cantey* and *Hanger & Short,* for appellee.

CONNER, CHIEF JUSTICE.—This suit was instituted by appellee in the District Court of Tarrant County on the 9th day of October, 1905, to recover damages in the sum of thirty thousand dollars for personal injuries. Appellee alleged that while in the employ of appellant in the capacity of a switchman, in the town of Mart, McLennan County, Texas, and while in the discharge of his duties in appellant's yards at that place, and while attempting to make a coupling between two cars, through the negligence of the railway company he suffered the loss of his right hand at the wrist. He alleged that he had been directed to make a coupling between a certain moving car, attached to an engine, and another standing upon a switch track in the yard; that he first attempted to open the automatic coupler on the moving car, which, being defective, would not open, and that while the moving car was approaching the standing car, he ran ahead and attempted to open the coupler on the standing car; that this coupler also proved to be defective and would not open automatically, and that he hence was compelled to endeavor to pull the coupling open with his hand. It was charged that appellant was guilty of negligence in permitting the switch track upon which the standing car was situated to be in the unsafe condition described in his petition, but inasmuch as the court under the evidence assumed that appellee knew of the condition of the switch track and that he therefore took the risks arising from this source, we need not refer to matters material to this issue. Appellee also alleged, however, that the cars by which he was injured were not properly equipped with automatic couplers, as required by law; that the couplers with which said cars were equipped were in bad order and not fitted with appliances to enable him to do the work; that if the cars had been properly equipped with automatic appliances plaintiff would not have been compelled to go between the cars to open the couplers, and negligence on appellant's part was charged in these respects.

Appellant in due time and manner presented its petition to remove

the cause to the Circuit Court of the United States, which being over-ruled, he thereupon answered by a plea of privilege, of assumed risk, and of contributory negligence by appellee. There was a trial before a jury who returned a verdict against appellant on its plea of privilege and in favor of appellee for the sum of eight thousand dollars, and judgment was entered accordingly.

It is first insisted that the court erred in refusing to grant appellant's motion and petition to remove this cause to the Circuit Court of the United States. The question presented is, do the facts as alleged in appellee's petition show that the case is one arising, in whole or in part, "under the Constitution or laws of the United States?" If so, then it is one over which the Circuit Court of the United States has been given original jurisdiction by the Act of Congress of March 3, 1875, and which hence, by the second section of the same Act, may be removed to such court from a State Court. See volume 1, United States Compiled Statutes of 1901, page 508. See also, Texas Pac. Ry. Co. v. Hightower, 12 Texas Civ. App., 43; Oregon Short Line Ry. Co. v. Skottowe, 162 U. S., 495; Galveston & C. Ry. Co. v. Texas, 170 U. S., 235; Texas & Pac. Ry. Co. v. Cody, 166 U. S., 606; Minnesota v. Northern Securities Co., 194 U. S., 48; Chappell v. Waterworth, 155 U. S., 102; Tennessee v. Union & P. Bank, 152 U. S., 454.

The allegations in appellee's petition upon which appellant principally rests its contention are that the "cars in use on defendant's said railway, and particularly the cars on which plaintiff was injured, were not properly equipped with automatic couplers, as required by law." It is urged that this necessarily involved a construction and application of the Act of Congress requiring railway companies to equip their cars with automatic couplers, and that therefore the suit arises, in part at least, under the laws of the United States, and consequently is removable. We hardly feel prepared to say that the allegations quoted necessarily import a reliance upon the Act of Congress mentioned, for it was undoubtedly appellant's duty under general principles of law to use ordinary care to furnish its servants with reasonably safe appliances, and the failure to furnish an automatic coupler, or furnishing a defective coupler, as alleged by appellee, might constitute negligence. But conceding that the allegations necessarily import a reliance upon the Act of Congress, we still conclude that no error has been made to appear in the action of the court in overruling appellant's motion for removal. By reference to the first and second sections of the Act requiring automatic couplers (see U. S. Compiled Statutes of 1901, vol. 3, p. 3174), it is perfectly apparent that the Act is made to apply only to common carriers engaged in interstate commerce. The Act has no application whatever to instrumentalities of transportation used alone within the boundaries of the several States, and it nowhere appears either in appellee's original petition, nor in the petition for removal, that appellant at the time was a common carrier engaged in interstate commerce, or that the cars charged to have been supplied with defective automatic couplers were loaded with, or about to be used in the transportation of articles constituting such commerce. The petition alleges appellant to be a corporation incorporated under the laws of this State and operating a line of railway between points in this State. The

record hence fails to show a removable case. (United States v. Geddes, 131 Fed. Rep., 452; United States v. Southern Ry. Co., 135 Fed. Rep., 122; Winkler v. Philadelphia Ry. Co., 53 Atl. Rep., 90; Johnson v. Southern Pac. Ry. Co., 117 Fed. Rep., 462.)

Some other questions not relating to the merits are raised by appellant's second, third and fourth assignments of error. Under these assignments it is insisted that the issue raised by what is termed appellant's pleas of privilege was not properly submitted, and that the evidence on that issue does not support the finding thereon in appellee's favor. The Act of the Twenty-seventh Legislature, page 31, chapter 27, provides that: "All suits against railroad corporations . . . operating any railway in the State of Texas, for damages arising from personal injury . . . shall be brought either in the county in which the injury occurred, or in the county in which the plaintiff resided at the time of the injury." The court's charge was as follows: "If you believe from the evidence that at the time of plaintiff's injury he had his residence in McLennan County, Texas, then you will find in favor of defendant's plea in abatement. On the contrary, if you believe from the evidence that at the time of plaintiff's injury his residence was in Tarrant County, Texas, then you will find against defendant's plea in abatement. In this connection you are instructed that the word 'residence' as used above means a fixed and permanent abode or dwelling place for the time being, as contradistinguished from a mere temporary locality of existence."

We approve the court's charge and find nothing therein nor in the evidence to justify appellant's special charges numbers 1 and 3, which were refused. Appellee's evidence tends to show that prior to the 19th day of August, 1904, he and his wife were and had long been residents of Tarrant County, Texas; that upon that day he went to Mart, in McLennan County, and accepted the situation of switchman under appellant. Appellee says in substance that his purpose in doing so was merely to acquire greater experience than he then had, and to qualify himself as switchman in the yards of the Texas & Pacific Railway Company in Fort Worth, where he was promised a situation in the fall; that while at Mart he engaged and paid for room and board; that his wife visited him but one time for some ten days, and then returned to Fort Worth and to visit some relatives in an adjoining county; that appellee never entertained the purpose of abandoning his home in Tarrant County and permanently taking up his residence in Mart; that while he had not expressed his purpose to appellant's employing officers, he nevertheless intended to abandon his position and temporary residence in Mart and return to Fort Worth "as quick as business picked up enough." Appellee further testified that his household goods had never been removed to Mart, but had remained stored at Fort Worth. So that we think, on the whole, the issue was one of fact merely, and that the evidence in behalf of appellee supports the jury's finding thereon.

Upon the merits, briefly stated, there is evidence tending to show that appellee, as alleged, had been directed to couple the cars in question; that the engine pushing one or more cars entered upon the switch from the south, appellee riding upon the car ladder of the most northerly

car; that when within a short distance of the car to which the coupling was to be made, appellee got down and in front of the car upon which he was riding and endeavored to so arrange the coupler upon that car as that the desired coupling could be made, but finding that the coupler upon this car was defective and not in working order, he then ran along the track in front of the moving train until he reached the standing car; that he then seized the lever of the automatic coupler with which that car had been provided, but found it, too, was out of order, a fact which he prior thereto did not know; that after making the first effort he made the second to work the lever, and again failing, he took his right hand and endeavored to open the coupler, his back all the time being toward the approaching car; that he then made a third effort with his left hand to operate the lever of the coupler, and that while doing so, his right foot slipped on the greasy ties or uneven roadbed, and his right hand was thrown forward and caught between the cars, which at that moment came in contact. The impact was such as to crush off appellee's hand at the wrist, and it fell upon the ground. By the court's charge appellee was made to assume the risks arising from the defective coupler on the moving car attached to the engine, and of the unprepared or defective condition of the track at the point of the accident, the proof undoubtedly showing that appellee knew of these defects and of the danger arising therefrom. Appellant insists, however, in effect and in various forms, that the court in its charge devolved a higher degree of care upon appellant than was required in providing and maintaining a sufficient coupler upon the standing car, and also urges that the proof shows that the injury was not proximately caused by appellant's negligence, if any, in providing a defective coupler, but was the result of appellee's own contributory negligence. But we have concluded that appellant's contentions in all these particulars must be overruled. The court submitted the issue of appellant's negligence "in furnishing said car (the standing car) with said coupling in said condition to be used by plaintiff upon the tracks where he was injured, constructed and in the condition you believe from the evidence that the track was in at the time." The contention is that appellant's duty did not require the equipment of the car with a coupler sufficient for the defective track and conditions confronting appellee at the time; that all that was required of appellant was that it should exercise ordinary care in furnishing proper equipment for tracks in the usual and ordinary condition. We are not disposed to agree to this contention. For appellant knew of the condition of the tracks; appellee was directed by one of appellant's vice-principals to discharge the duty of making the coupling thereon; and the duty rested upon appellant of providing appellee with reasonably safe appliances for the performance of the duty assigned. But whatever force there may be in the distinction mentioned, we find nothing in the evidence rendering it material. Appellant under the assignments raising this question (the fifth, sixth and seventh) points out no evidence that tends to show that the defective coupler referred to would have been reasonably safe on any other kind of track. According to appellee's testimony the issue was one of a defective coupler *vel non,* regardless of the place or the condition of the

track where he attempted to use it. The error, therefore, if any, was harmless.

We find no fault with the court's submission of the issue of appellee's alleged contributory negligence, and we think under the evidence it was for the jury to say whether appellee was guilty of negligence in endeavoring to make the coupling at the time and under the circumstances he did. We also feel unable to say that the verdict in his favor on this issue is unsupported by the evidence. Appellee, therefore, having acted as a man of ordinary care and prudence in his own safety, as we must assume from the verdict of the jury, it was also for the jury to say whether appellant was guilty of negligence in respect to the coupler, as alleged, and if so, whether such negligence contributed to appellee's injury. The mere fact that appellee slipped upon a greasy tie or lost his footing from a defective roadbed—risks which he assumed—will not relieve appellant, if concurrently therewith a negligent failure or act on appellant's part operated in producing the loss of appellee's hand. Appellee can not be held to have assumed a risk arising from negligence attributable to appellant of which he did not know, and it seems to us that the evidence fairly supports the inference that there was an unbroken connection between the act of appellee's hand slipping off of the defective coupler, the foot slipping off of the greased tie on the defective track, and the resulting injury. If so, and a reasonably prudent and careful person, in view of all the circumstances, would have anticipated the result or some such like injury from the use or attempted use of the defective coupler, then there can be no question but that appellant is liable. We feel unable to say that the evidence fails to support the verdict in appellee's favor in these respects, and the court hence properly submitted the issue of negligence in respect to the coupler as a proximate cause of the injury.

The remaining assignments relate to argument of appellee's counsel alleged to be objectionable, but the brief points out no error in this respect, and, as we view these assignments, they will not be discussed.

Believing, as we do, that the evidence sufficiently supports the material allegations of appellee's petition, and that the cause was fully and fairly submitted by the court, the judgment will be affirmed.

*Affirmed.*