## SNYDER et al. v. JOHNSON.

### No. 6111.

Court of Civil Appeals of Texas. Amarillo.

Nov. 20, 1950.

Rehearing Denied Jan. 2, 1951.

King Fike, Dalhart, Storey, Storey & Donaghey, Vernon, for appellant.

Richards & Richards, Dalhart, for appellee.

LUMPKIN, Justice.

This is an appeal from an order overruling a plea of privilege. The parties will

be designated as they were in the trial court. Defendants attack the trial court's judgment on the sole ground that the pleadings and evidence are insufficient to support it.

The plaintiff, Robert Earl Johnson, sued the defendants, Cecil Snyder and Sam Parker, in the district court of Dallam County, Texas, for the alleged breach of an oral contract. The plaintiff asked for damages in the sum of $3,015.93. In the same suit, but as a distinct cause of action, the plaintiff sued the defendants for the conversion of $810.28. The plaintiff's original petition was filed on September 17, 1949.

The plaintiff alleged that the defendants were partners engaged in the building of houses; that Sam Parker was domiciled in Wilbarger County, while Cecil Snyder was a resident of Dallam County; that he entered into a contract with the defendants for the construction of a house in Hartley County; that the defendants did not satisfactorily perform the services agreed upon; that because a difference arose between them, the plaintiff finally paid the defendants $200 to get them off the job but through error overpaid them $810.28.

The defendants filed a plea of privilege in which they alleged they were each residents of Wilbarger County. The plaintiff controverted the plea of privilege by an affidavit in which he stated that Cecil Snyder was a resident of Dallam County, Texas, within the meaning of Subdivision 4 of the venue statute, Article 1995, Vernon's Annotated Civil Statutes; that Sam Parker was a resident of Wilbarger County; that both men were proper parties to the suit under Subdivision 4; that by reason of Cecil Snyder's residence in Dallam County, the suit could be maintained in that county under Subdivision 29a of the venue statute; and that, by the conversion of $810.28, the defendants had committed a crime or trespass in Dallam County and for that reason the suit could be maintained in Dallam County under Subdivision 9.

The defendants specially excepted to all of the controverting affidavit on the grounds that the allegations contained in it were conclusions and that it did not specifically set out the fact or facts relied upon to confer venue in Dallam County. The defendants further excepted to the controverting affidavit because, they alleged, there are conflicts between the petition and the affidavit and because the affidavit attached to the controverting plea is not sufficient in law to make the allegations of the petition a part of the controverting affidavit. After a hearing before the court without a jury the defendants' plea of privilege was overruled. The defendants excepted to the court's ruling and in due time perfected their appeal to this court.

The defendants contend that the trial court erred in overruling the defendants' special exceptions to the plaintiff's controverting affidavit. They insist that plaintiff's affidavit, as required by Rule 86, Texas Rules of Civil Procedure, does not specifically set forth the grounds on which he seeks to maintain venue in Dallam County.

Our courts have held that where a defendant files a plea of privilege, it must appear unmistakably that the one who swore to plaintiff's controverting plea has verified the whole instrument. If the original petition becomes a part of the controverting plea by reference or by adoption by the pleader, the affiant must likewise definitely swear to the truth of facts alleged in it. C. F. Lytle Co. v. Preston, Tex.Civ.App., 175 S.W.2d 440; A. H. Belo Corporation v. Blanton, 133 Tex. 391, 129 S.W.2d 619.

In this case the plaintiff by his controverting affidavit seeks to maintain venue in Dallam County under Subdivisions 4, 9 and 29a, Article 1995, Vernon's Annotated Civil Statutes. Attached to the controverting affidavit are copies of the plaintiff's original and first amended petitions, which are made a part of the controverting plea in the following language: "Plaintiff attaches hereto a carbon copy of plaintiff's original petition filed in this cause and marks the same Exhibit A, and plaintiff attaches hereto a carbon copy of

plaintiff's first original amended petition filed herein and marks the same Exhibit B, and here now incorporates each and both of said Exhibits A and B into this controverting affidavit as fully and completely as if copied herein verbatim and makes each and both of the same a part of this controverting affidavit."

In our opinion this language is sufficient to make the plaintiff's original petition and his first amended petition a part of his controverting plea. In Cogdell v. Martin, 176 S.W.2d 982, 984, the Fort Worth Court of Civil Appeals said: "It has long been the recognized rule of procedure in this state that the controverting affidavit may adopt the petition as a part thereof and in such instances it becomes a part of the affidavit and need not be copied therein. Rule 58 Texas Rules of Civil Procedure; Bates v. Stinnett, Tex.Civ.App., 170 S.W. 2d 644, and the older cases there cited."

■ The defendants likewise insist that the affidavit purporting to verify the controverting plea is not sufficiently broad to cover the allegations contained in the plaintiff's original petition and in his first amended petition. To the controverting plea the following jurat is attached: "Before me, the undersigned authority, on this day personally appeared Robert Earl Johnson, who on his oath stated that he is plaintiff in the above entitled and numbered cause, and that the allegations, denials and facts set out in the foregoing controverting plea, and in Exhibits A and B, attached to said controverting plea, are all true and correct." Since the petitions were made a part of the controverting affidavit, the affiant swore to the whole plea. This is all that is required by the law. Cogdell v. Martin, supra; Evans v. Jeffrey, Tex. Civ.App., 181 S.W.2d 709; Spencer v. Gray, Tex.Civ.App., 209 S.W.2d 651.

■ The requisites of a plea of privilege are set forth in Rule 86, Texas Rules of Civil Procedure. Under this rule a plea of privilege is prima facie proof of the defendant's right to a change of venue unless the plaintiff shall "file a controverting plea under oath, setting out specifically the grounds relied upon to confer venue

of such cause on the court where the cause is pending." It has been observed that the plea of privilege is a creature of the law enacted for the benefit of the defendant; only the exceptions are for the benefit of the plaintiff. As against a defendant's plea of privilege, and before he can be deprived of the right of trial in the county of his domicile, the plaintiff must plead and prove that his cause comes within one or more of the exceptions to the venue statute. In the case of A. H. Belo Corporation v. Blanton, supra, 129. S.W. 2d at page 622, the Supreme Court said "that the plaintiff in his controverting affidavit * * * must allege, either in the controverting affidavit or by a specific reference to and adoption of allegations in his petition, sufficient facts as venue facts upon which the alleged cause of action is sought to be maintained."

■ In order to establish venue in Dallam County, plaintiff is required to prove venue in such county only by a preponderance of the evidence to the satisfaction of the trial court; a jury having been waived. It is unnecessary for us to pass upon each of the exceptions relied upon by the plaintiff to maintain venue in said county. We therefore express no opinion upon the effect of either the pleadings or the evidence relating to the exceptions found in Subdivisions 9 and 29a of the venue statute. We believe that the nature of plaintiff's action and the evidence offered are sufficient under Subdivision 4 to sustain the trial court's judgment overruling the defendants' plea of privilege. Eppenauer v. Schrup, Tex.Civ.App., 121 S.W.2d 473; Central Motor Co. v. Roberson, Tex.Civ. App., 139 S.W.2d 287; American Seed Co. v. Wilson, Tex.Civ.App., 140 S.W.2d 269; Super-Cold Southwest Co. v. Green & Romans, Tex.Civ.App., 185 S.W.2d 749.

■ The pertinent portion of Subdivision 4 reads as follows: "4. Defendants in different counties.—If two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides. * * *" There is no question but that Sam Parker resided in Wilbarger County. In order to

maintain venue in Dallam County under Subdivision 4, the plaintiff must have a bona fide cause of action against the resident defendant, as well as against the nonresident. This essential cause of action must be pleaded, and the cause alleged against the resident defendant must be supported by proof when placed in issue by the plea of privilege. Henderson Grain Co. v. Russ, 122 Tex. 620, 64 S.W.2d 347, 353. We do not consider it necessary to set forth in detail the plaintiff's allegations as found in his original and first amended petitions. He named as defendants individually and as partners Cecil Snyder, a resident of Dallam County, and Sam Parker, a resident of Wilbarger County. He alleged that the parties had entered into an oral agreement to construct a part of plaintiff's home, which was located at Dalhart, Hartley County, Texas. (The City of Dalhart is partly in Hartley County and partly in Dallam County). The plaintiff alleged that he was to pay the defendants, $8,989.72 for the performance of their part of the agreement and that although he had performed his part of the agreement, the defendants had failed to comply with their part. In his petition the plaintiff set forth the particulars in which the defendants had failed to fulfill the agreement. He pleaded that instead of paying the defendants the sum of $8,989.72, as agreed between the parties, he had paid them the sum of $9,800, or $810.28 more than they were entitled to. The plaintiff pleaded that the defendants had converted the $810.28 to their own use. He alleged damages in the total amount of $3,826.21. The foregoing is a summary of the nature of plaintiff's causes of action alleged against both defendants.

The defendants insist that the trial court erred in admitting evidence on the question of venue because of the insufficiency of plaintiff's pleadings. We think the facts alleged in the controverting plea were sufficient to permit the introduction of evidence; and, in our opinion, the evidence is sufficient to establish a ground of venue as alleged by the plaintiff in his controverting plea and in his original and first amended petitions.

In a venue case the reviewing court must observe the same rules in examining the evidence as it would in any other case on appeal. Every disputed issue raised by the evidence must be resolved in favor of the trial court's judgment. It is well-settled that a trial court's findings will not be disturbed by an appellate court where there is some evidence of probative force to support them, even though the evidence is conflicting and the appellate court possibly might have reached a different conclusion. In considering the sufficiency of the evidence to sustain the findings, the reviewing court must disregard all adverse evidence and consider only the favorable evidence, indulging every legitimate conclusion in favor of the findings. It will be presumed that a trial court found the facts necessary to support the judgment entered. Rogers v. Fort Worth Poultry & Egg Co., Tex.Civ. App., 185 S.W.2d 165; 3 Tex.Jur. 1090. Therefore, disregarding all evidence to the contrary, we shall examine the testimony and determine whether there is sufficient evidence to sustain the implied finding of the trial court to the effect that Cecil Snyder was a resident of Dallam County within the meaning of Subdivision 4 at the time this cause was filed. It should be remembered that the defendants do not complain about the admissibility of any evidence, but they charge only that the evidence heard as a whole is insufficient to support the trial court's findings.

Co-defendant, Sam Parker, testified in effect that he and defendant, Snyder, had been engaged in a joint enterprise in Dallam County for approximately two years and that Snyder had been in Dallam County supervising the work considerably more than the witness had; that their headquarters were in Wilbarger County, but that Snyder was up there most of the two years they were doing work in Dallam County and adjoining counties and that during such period of time Snyder lived in Dallam County. He further testified that they were then constructing in Dallam County a building in which the partners owned an interest. The defendant, Cecil Snyder, testified in effect that

in June of 1948 he and Parker had contracted to build approximately twenty-five dwellings and commercial buildings in the vicinity of Dalhart, Dallam County; that he had lived in Dalhart since that time except for trips to Wilbarger County. The plaintiff, Robert Earl Johnson, testified that the defendant Snyder had resided in Dalhart, Dallam County, since June 10, 1948, and the plaintiff's wife stated that Snyder had lived in Dallam County from the time he had commenced construction of her home and that he had remained and lived there from that time to May 25, 1950, the date of the trial. The question of where Snyder maintained his residence was an issue of fact for the trial court, which found the evidence adequate to support its implied finding that Snyder's residence was located in Dallam County. We find sufficient evidence to support the trial court's judgment. Bolton v. Alley, Tex. Civ.App., 25 S.W.2d 638.

In support of their contentions, defendants cite the case of Page v. Kilgore, Tex.Civ.App., 181 S.W.2d 730, a comparatively recent case by Chief Justice Rice of the Waco Court of Civil Appeals. In that case the plaintiff sought to maintain venue in McLennan County. The trial court found that defendant had resided in Travis County but that McLennan County had venue under Subdivision 9 of Article 1995 because of the commission of an offense in that county. The judgment was reversed by the appellate court on the ground that no such offense was committed, and the cause of action was ordered transferred to Travis County. Nevertheless, plaintiff maintained his point on appeal and urged that defendant had maintained a residence for venue purposes in McLennan County. In passing on the question the appellate court held that the evidence was sufficient to support a finding either for or against plaintiff's contentions, but in as much as the trial court had found against plaintiff on the issue, the appellate court was not authorized to disturb the finding. The reviewing court states the evidence in substance as follows: Defendant Page had been married and had lived with his wife for thirty years; since 1928 they had maintained their residence in Travis County and had not resided anywhere else. Page had temporary business in McLennan County and maintained a room at the Roosevelt Hotel in Waco but went back to Austin, where his wife lived all the time, two or three times a week; sometimes he would be gone from the Roosevelt Hotel for three weeks at a time. He traveled a great deal—70,000 miles during the previous year; Page's wife had never spent one night with him at the Roosevelt Hotel in Waco. Page and his wife both paid their poll tax and voted in Travis County; his residence was listed in the telephone directory in Austin, Travis County. Upon this statement of facts, the reviewing court held that the evidence would have supported a trial court finding to the effect that Page resided in McLennan County for venue purposes if the trial court had so found. The case at bar is a much stronger fact case than the Page-Kilgore case.

The Commission of Appeals held in the case of Pittsburg Water Heater Co. of Texas v. Sullivan, 115 Tex. 417, 282 S.W. 576, that a person may have but one domicile; that he may have several residences, and he is suable in any one of such places of residence.

The reviewing court held in a case similar to the one at bar, Wrenn v. Brooks, Tex.Civ.App., 257 S.W. 299, that the issue of residence is a question of fact and the trial court's finding in such a matter cannot be disturbed if there is sufficient evidence to support it.

In order to maintain venue under Subdivision 4, over a non-resident defendant, the plaintiff must show that the non-resident defendant is a proper or necessary party, and if he can, then venue may be maintained against the non-resident defendant solely on the ground of the residence of his co-defendant. Henderson Grain Co. v. Russ, supra. A reading of the plaintiff's petitions reveals that this suit was brought against the defendants jointly and severally. Both defendants are jointly and severally liable. Both are necessary parties. Yantis v. Gilliam,

Tex.Civ.App., 62 S.W.2d 173; American Seed Co. v. Wilson, supra; Stockyards National Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300.

We have carefully examined the record in this case and the assignments of error. In our opinion the record justifies the trial court in finding and concluding that plaintiff discharged the burden of pleading and proving that venue should be maintained in Dallam County under Subdivision 4 of the venue statute; therefore, it did not err in overruling the defendants' plea of privilege. All of the defendants' points of error are overruled; the judgment of the trial court is affirmed.

STOKES, Justice (dissenting).

I regret that I am unable to agree with my colleagues in the conclusions expressed by them in the opinion which they have handed down in this case. I have carefully read the entire statement of facts and, in my opinion, there is no evidence whatever to support the finding of the court below and affirmed by the majority of this court that appellant Cecil Snyder was, in any sense, a resident of Dallam County, either at the time this suit was filed or at any previous time. The conclusion of the majority to the contrary is based principally upon their interpretation of the testimony of appellant Sam Parker. No question is raised as to Parker's residence. He is alleged and admitted to be a resident of Wilbarger County and no claim is asserted that he ever established his residence in Dallam County. The majority say Parker testified that he and Snyder were engaged as contractors in the construction of houses in Dallam County and at Stratford which is in Sherman County, in Texas, and at other places located in the States of Oklahoma and Kansas; that he said Snyder was at Dalhart most of the two years in which they were engaged in the construction of the houses and that they were then constructing a building in Dallam County in which they owned an interest. They note also that appellee Johnson testified that appellant Snyder had resided in Dalhart, Dallam County, since June 10, 1948, and that appellee's wife stated that Snyder "had lived in Dallam County from the time he had commenced construction of her home and that he had remained and lived there from that time to May 25, 1950, the date of the trial." The opinion of the majority further states that appellant, Cecil Snyder, testified in effect that he had lived in Dalhart since that time (June, 1948,) except for trips to Wilbarger County. Upon this testimony the majority base their holding that the judgment of the court below had support in the evidence. It is not claimed by appellee, nor found by the majority, that any witness testified that appellant Snyder had ever established any sort of a legal residence in Dallam County, or to facts from which the conclusion could be drawn that he had done so. The contention of appellee and finding of the majority are that Snyder lived in Dallam County during the time he was engaged in construction work in that vicinity.

As I understand the law, it is not a question of where a man lived or existed, but one of residence. Of course he "lived" in Dallam County while engaged in building the houses there. He could not have performed the work if he had not "lived". Dead men do not build houses. The question is one of "residence". All of the testimony showed that Snyder was a married man; that he owned the home at Vernon in which he and his wife lived and maintained their residence in Wilbarger County; that he rendered and paid his taxes in Wilbarger County; that he voted there and his automobile was registered there; that he and his wife had been married seventeen years and had lived together in Wilbarger County during all of that time. The houses that were constructed by Snyder and his partner were located in Dallam and Sherman Counties in Texas and in Oklahoma and Kansas. It was shown that, during the time he was engaged in constructing the houses, Snyder had a room at a hotel in Dalhart part of the time and at a private residence part of the time but that, on week-ends and at other times when the work would slacken, he returned to his wife and home at Vernon in Wilbarger County. His wife visited him for a day or two at Dalhart upon only one occasion. He never

owned or maintained any furniture in Dallam County nor made any preparations whatever for his wife to live with him there, nor did he own or rent a residence there nor make any other preparation to establish a residence there. The fact that he "lived at Dalhart" during the time he was engaged in constructing the houses is the only basis in the evidence for the action of the court below in overruling the plea of privilege and that alone could not make of him a resident of Dallam County. The mere fact that appellee, Johnson, used the word "resided" instead of "lived" added nothing to the strength of the evidence. The most that can be said of the testimony is that it showed he commuted back and forth between his home at Vernon, in Wilbarger County and Dalhart in Dallam County during the time he was engaged in building the houses in the vicinity of Dalhart. It is settled law in this State that the term "resident" means one who dwells permanently or for a considerable time in a certain place; that he has a settled abode there for a time. Residence is largely a question of intention which is made to appear by the facts and circumstances of the case. No fact or circumstance indicating an intention of Snyder ever to establish his residence in Dallam County is pointed out by the majority opinion and none whatever is shown by the evidence. Marsden v. Troy, Tex.Civ.App., 189 S.W. 960; Bolton v. Alley, Tex.Civ.App., 25 S.W.2d 638; International & G. N. Ry. Co. v. Elder, 44 Tex.Civ.App. 605, 99 S.W. 856; Houston Printing Co. v. Tennant, 120 Tex. 539, 39 S.W.2d 1089; Ex parte Blumer, 27 Tex. 734.

In the majority opinion it is said that "The defendant, Cecil Snyder, testified in effect * * * that he had lived in Dalhart since [June 1948] except for trips to Wilbarger County." I do not find any testimony in the record to support that conclusion. Snyder testified positively that his home had never been in Dallam County; that he had a room in a hotel part of the time; that he transacted business in Dalhart; and that he returned to his home in Wilbarger County on week-ends and at other times. He said that he also had a room at a private residence in Dalhart but that his home was in Wilbarger County. This testimony, in my opinion, does not support the statement that Snyder testified, in effect, that he had lived in Dalhart for approximately two years except for trips to Wilbarger County. Even if it could be so construed, however, it could not mean anything more than that he was personally present at Dalhart during the time he was engaged in constructing the houses and mere personal presence at a place is not sufficient to establish one's residence there.

Article 2958, Revised Civil Statutes, provides that the "residence" of a married man is where his wife resides. While that article is a portion of our election statutes, the rules for determining residence prescribed therein are followed in other civil cases. It is not contended by appellee nor anyone else that Mrs. Snyder ever established her residence in Dallam County, nor that either she or her husband, appellant Snyder, ever entertained the thought or contemplation that either of them would establish a residence there. Hennessey v. Campbell, Tex.Civ.App., 32 S.W.2d 390; Kelly v. Egan, Tex.Civ.App., 143 S.W. 1183; Devereaux v. Rowe, Tex.Civ.App., 293 S.W. 207; Fidelity & Deposit Co. of Maryland v. First National Bank of Teague, Tex.Civ.App., 113 S.W.2d 622.

It has been established by the decisions of the courts of this State that a man may have two residences, located in different counties, and that he may be sued in either county. In all the cases in which pleas of privilege were overruled upon that ground, however, as far as I know or am able to ascertain, it was shown that each of the defendants either owned a home in each county or had established a residence there and lived with his family in each county a portion of the time. Moreover, in each of them it was evident from the testimony that the defendant's intention was to reside with his family in the county where the suit was filed at least a portion of the time. Intermittent or temporary business journeys into localities other than one's residence is not sufficient to show residence as against a defendant who files a plea of

748

privilege. Agey v. Red Star Supply Co., Tex.Civ.App., 113 S.W.2d 212; Joy v. Marshall Field & Co., Tex.Civ.App., 51 S.W.2d 731. It is the place of his residence, that is, where he has a settled abode and, if a married man, as appellant Snyder is, where his wife abides for all or a portion of the time that determines the county in which suit may be maintained against a defendant who files and urges a plea of privilege.

Article 1995, R.C.S., provides that, with certain specified exceptions, no person who is an inhabitant of this state shall be sued out of the county in which he has his domicile. It is now established that the word "domicile" has the same meaning in the statute as "residence." The privilege to be sued in the county of one's residence is a valuable right. It should not be destroyed upon a doubtful or strained construction of the testimony nor of any exceptional provision contained in the law. To deprive a defendant of the right to be sued in the county of his residence, the testimony must be clear and satisfactory that he has a residence in the county where the suit is brought or the case against him must be clearly brought within one of the exceptions provided by the statute. Lasater v. Waits, 95 Tex. 553, 68 S.W. 500; Browne v. Heid Bros., Tex.Civ.App., 12 S.W.2d 587; Coalson v. Holmes, 111 Tex. 502, 240 S.W. 896; Michel v. Farmers' State Bank, Tex.Civ.App., 95 S.W.2d 1359.

As I view the testimony in this case, the question of whether or not appellant Snyder was a resident of Dallam County at the time this suit was instituted, or at any other time, is not even doubtful. There is not one line of testimony which establishes a single element of residence in Dallam County, as required by the statute and many decisions of our courts. The nearest any of the testimony came to establishing his residence there was that some of the witnesses testified he "lived" there while he was engaged in constructing the houses mentioned. The law does not provide that an inhabitant of this state may be sued at the place where he happens to be existing, or "living" when the suit is brought. It

clearly provides that no inhabitant shall be sued out of the county in which he has his residence or domicile except in certain cases and none of the exceptions is even claimed to exist as far as appellant Snyder is concerned. Only a transient person may be sued in any county where he may be found and Snyder was not a transient person. He was an inhabitant of this State.

Appellee contends that venue was properly laid in Dallam County under Subdivision 9 of Article 1995, which provides that a suit based upon a crime, offense, or trespass may be brought in the county where such crime, offense, or trespass was committed. He contends the evidence in this case shows that appellants committed the crime of theft in connection with his payment to them of the contract price for the work they had performed on his home. The undisputed testimony in reference to that phase of the case was that appellee was dissatisfied with the manner in which appellants were doing the work. A number of controversies had arisen between them while it was being performed. Before the building was completed, appellee proposed to appellants that he would pay them what he owed them at that time if they would remove their equipment from his premises by the following Saturday and the contract he had with them would thus be abrogated as to any further construction work appellants had agreed to perform. Appellants told appellee that they did not know how much he owed them and asked him for his opinion of it. He had before him at the time some figures he had made and, without apparent hesitation, he told them he had figured it to be $2700. Appellants had no figures and apparently had kept no books or account of the work they had performed or material they had furnished. Appellant Snyder hesitated to accept appellee's check for the $2700, stating to appellee that he, Snyder, did not like to do business that way; that appellee was mad and he, Snyder, thought they should wait awhile to settle the matter. Parker suggested that they accept appellee's check and proposition to terminate their part of the construction contract and it was then and there agreed by all of them that the matter would be settled

in the manner suggested and proposed by appellee. At sometime during the conversation or shortly afterwards, Parker said to his partner Snyder, substantially, that, "under this settlement, the tile will not cost us anything". This statement was made in the presence of appellee and it is the only evidence offered by appellee or shown in the record to support appellee's contention that appellants knew they were being paid more than they were entitled to receive from appellee under the original contract and it could not amount to more than Parker's approval of the settlement offered to them by appellee and Parker's expression of satisfaction with it. The charge of theft is based upon the allegation of appellee that appellants knew at the time that appellee was paying them more than they were entitled to receive. The authorities cited by appellee in support of his contention are the cases of Fulcher v. State, 32 Tex.Cr.R. 621, 25 S.W. 625 and Hedge v. State, 89 Tex.Cr.R. 236, 229 S.W. 862, 14 A.L.R. 889. The facts in the Fulcher case were that Fulcher presented to the bank a check upon which the cashier, by mistake, paid him $500 more than the check called for. The Court of Criminal Appeals held that if, at the time the appellant received the money, he formed the criminal design to appropriate it to his own use, and did so appropriate it, it would be theft. In the Hedge case, it was shown that one Watkins owed Hedge $636.79 and that, by mistake of Watkins, he delivered to Hedge a check for $1,061, payable to Hedge, and that it was for an amount of $424.21 more than was due. The excess was appropriated by Hedge and the court held that, if Hedge received the check in question, knowing at the time that it represented a larger amount than was due him, and intended at the time of its reception to appropriate to his own use such amount as might be in excess of what was his, and did so appropriate it, his action would be theft.

The majority does not discuss this contention in its opinion but, in our consultations, it has appeared that at least one member of the court is in doubt about it and that the action of appellants upon the occasion when appellee paid them the $2700 might constitute theft of the amount which appellee paid them over and above the original contract price for which they agreed to construct his building. I am unable to see a single element of theft in that transaction. It was a new contract and constituted an accord and satisfaction. The only mistake, if any, that is shown by the evidence, and the only one claimed by appellee, is that he paid them more money than the original contract called for. He said that, at the time he paid it, he had overlooked a payment of $2000 he had theretofore made to them. There is no contention, or even a suggestion, that a mutual mistake was made or that appellants knew, or had any idea of, the amount appellee owed them up to that time, nor that they knew or realized appellee had overlooked an alleged payment of $2000 of which no account was being taken in the proposed settlement. The statement of Parker to his partner Snyder, in the presence of appellee, that, under the settlement they had just made with appellee, the tile used in the building would not cost them anything, is far from establishing appellants' knowledge of the fact that appellee was laboring under a mistake when he offered them the settlement under which he paid them $2700. They complied with the contract of settlement, removed their machinery and equipment from the premises, and nothing further was heard of the matter for several months. Snyder's suggestion that appellee was mad at the time and that they wait until the parties cooled off showed clearly his good faith and honesty in the matter of accepting the proffered settlement. I do not think it requires the citation of authorites to establish the absence of any element of the crime of theft in this transaction. It was nothing more than an accord and satisfaction. If appellee made a mistake in offering to pay them $2700, it was his mistake, not a mutual one and, since it is not shown the appellants knew anything about it, their act of agreeing to the settlement and accepting appellee's check could not constitute theft. In my opinion it follows that the district court of Dallam County did not acquire venue of this case under Subdivision 9 of Article 1995, Revised Civil Statutes.

In my opinion the judgment of the court below, overruling appellants' plea of privilege, was wholly without evidence to support it and, instead of being affirmed, the judgment should be reversed and the cause ordered transferred to the district court of Wilbarger County.