## GREER v. NEWTON.
### No. 2898.

Court of Civil Appeals of Texas. Eastland.

Dec. 14, 1951.

George R. Killam, Jr., Snyder, for appellant.

Camp & Camp, Cameron, H. J. Brice, Snyder, for appellee.

GRISSON, Chief Justice.

Greer sued Newton in Scurry County and Newton filed a plea of privilege to be sued in Milam County. In a trial to the court the plea of privilege was sustained and the cause ordered transferred to Milam County. Greer appealed.

■ The substance of appellant's contention is that the evidence shows conclusively, that is, as a matter of law, that Newton had a residence in Scurry County. If there is evidence of probative force from which it may reasonably be concluded that Newton did not have a residence in Scurry County we must affirm the judgment. In determining whether there is any such evidence we consider only the evidence favorable to the finding of the trial court and disregard all contradictory evidence. Renfro Drug Co. v. Lewis, Tex. Sup., 235 S.W.2d 609, 613; 3 Tex.Jur., 1090.

■ Article 1995, Vernon's Ann.Civ. St. provides that no person shall be sued out of the county in which he has his "domicile", with certain exceptions not material here. The word "domicile" is used in the venue statute in the sense of "residence." Strictly speaking, although a person may have but one domicile, he may have more than one residence and may be sued in any county in which he has a residence. Pearson v. West, 97 Tex. 238, 77 S.W. 944.

■ In Snyder v. Pitts, Chief Justice, 241 S.W.2d 136, 140, our Supreme Court said that:

"A second residence away from a domicile within the meaning of the first sentence of art. 1995 must include the following elements: .

"1. A fixed place of abode within the possession of the defendant

"2. occupied or intended to be occupied consistently over a substantial period of time

"3. which is permanent rather than temporary."

It held that the failure of the wife to live in the second place of abode does not as a matter of law prevent it from being a second residence and, conversely, the presence of the wife in the second place of abode for a considerable period of time does not establish a second residence there as a matter of law. It held that the question of whether a stay is temporary or permanent may be a question of intention which may be proved by declarations and acts.

In 12 A.L.R.2d 764, it is said: "While the pursuit of business interests in a locality may, in the absence of contrary evidence, be some indication of a residence there, it is plain that such evidence is of extremely low character on the question * * *."

In Snyder v. Johnson, Tex.Civ.App., 237 S.W.2d 740, Johnson sued Snyder and Parker in Dallam County. The defendants filed a plea of privilege asserting they were residents of Wilbarger County. Plaintiff filed a controverting affidavit in which he alleged Snyder was a resident of Dallam County. There was evidence that Parker and Snyder were engaged in a joint enterprise in Dallam County for two years; that Snyder had been in Dallam County supervising the construction of houses there and in adjoining counties for about two years; that their headquarters were in Wilbarger County but Snyder was in Dallam County and lived there most of two years; that they were constructing a building in Dallam County in which they owned an interest. Snyder testified he had lived in Dallam County during said time except for trips to Wilbarger County. The Court of Civil Appeals held that the evidence justified the finding that Snyder resided in Dallam County. The Supreme Court called attention to the fact that Snyder rented a room at a hotel part of the time and at a private residence part of the time during a period of fifteen months while he was supervising the construction of buildings in Dallam and adjoining counties, and elsewhere, from a business headquarters in Dallam County; that he spent most of his time in Dallam County, although he went to Wilbarger County on week-ends and holidays when his business permitted; that on one occasion his wife visited him for a day or two in Dallam. The court called attention to the fact that he occupied rented rooms in Dallam County, spent about five days a week there for about two years; that the headquarters for his business was in Dallam County; that Snyder occupied constantly and with continuity a fixed place of abode in Dallam County in such manner that he had ceased to be a visitor. The Supreme Court held it was a question of fact whether Snyder had a residence in Dallam County and that there was some evidence to support the trial court's finding that he had acquired a second residence there.

We shall now examine the evidence, especially the testimony or admissions of Newton, to determine whether or not, in view of the authorities, the evidence shows conclusively, that is, as a matter of law, that Newton had a second residence in Scurry County. It is undisputed that Newton is a doctor who owns and operates a hospital in Milam County, where he has his domicile and where his wife and children make their home. He testified that he had owned the Snyder Hospital Clinic in Scurry County from February 1, 1950 until the trial on March 23, 1951; that he maintained headquarters for all his enterprises in Milam County; that social security reports for the Bureau of Internal Revenue are filed through his Milam County office, including those from the Snyder hospital; that he registered for the draft in Milam County; that his wife and children had not been in Snyder the last twelve or fourteen months, except that his wife came out the last few months to make a visit for a day or two at a time, probably three or four nights on three occasions; that she did not move her residence nor personal belongings from Milam County; that the contract sued on provided that Greer should have complete charge of all administrative and business activities of the hospital at Snyder; that this provision was placed in the contract because Newton's home was in Cameron and he antici-

pated being there and wanted someone to manage his Snyder business; that he had never planned to move his home from Milam to Scurry County. On cross-examination he testified that his license to practice medicine was recorded in Scurry County; that it was, also, recorded in Harris County; that he filed his license in the office of the District Clerk of Scurry County on February 10, 1950; that he filed a certificate under the Assumed Name statute, Art. 5924, in Scurry County on February 24, 1950, in which he signed a statement that his post office addresses were Snyder and Cameron, Texas. He testified that when he stayed in Scurry County he lived in a motel in Snyder and when not there he was likely to be at the hospital; that he had a telephone in his room and at the hospital which were listed under his name in the Snyder telephone directory; that he had a locker at the Brown Food Locker in Snyder; that he did not know how long he had been staying at the Downtown motel; that his hospital in Scurry County had a bank account and its payroll checks were written and issued from said hospital on a Snyder bank.

Dr. Cockrell testified on behalf of appellee that he sold the hospital to Newton and talked to him about moving to Snyder; that Newton said he had a home and was going to maintain it where it was; that he was not going to move to Snyder; that he would not discuss buying Cockrell's home for that reason; that he had often visited Newton in Snyder "at home part of the time at Canyon Courts and part of the time at the Downtown Court;" that he had visited Dr. Newton in his home in Milam County; that he maintains a home there where his wife and children stay.

Greer testified that Newton told him he planned to move his family to Scurry County; that he intended to make the hospital a permanent institution and later open a clinic; that he intended to move his family later; that these statements were made in April and May, 1950. He testified that Newton maintained two accounts for his Snyder hospital in two banks in Scurry County during the time Greer was administrator of the hospital; that in a hospital staff meeting on September 28, 1950, Dr. Newton stated to him that he was the chief of staff of the hospital.

Dr. Smith testified that Newton said he was the chief of staff of the hospital. He further testified that, before March 1, 1951, he visited Newton in Scurry County in his cabin at Canyon Courts, which was shared with other doctors; that he was under the direct orders of Dr. Newton in 1951; that Newton had been "largely and continually in attendance and in charge of the hospital since January 1, 1951."

Mr. Dotson testified that he was the business manager in charge of the accounting department at Newton's hospital in Scurry County from May 1, 1950 to January 23, 1951; that when he first came to Snyder he resided with Newton at the "Downtown" motel; that he resided there with him during the month of May, 1950; that on various occasions since May, 1950, he had visited Newton in his cabin at the Downtown motel; that about a week or ten days before the trial was the last time he visited him anywhere except at the hospital. Dotson further testified that Newton operated a hospital in Cameron, known as the Newton Memorial Hospital & Clinic; that his wife and children lived there; that the social security reports in Snyder were mailed to Cameron and from Cameron to the federal government; that they were not made from Snyder; that the witness furnished the information to a man in Cameron; that he knew Mrs. Newton; that she was not on the payroll of the hospital at Snyder but that Mrs. Newton did work at said hospital at various times. "Maybe she would be here a week, go back, then out here again." That, in all, he would say this happened three times. "Q. That is for a couple or three weeks at a time? A. Yes." On re-direct examination, Dotson testified that since he was employed at the Snyder hospital (from November 1, 1950 until May 1, 1951) Mrs. Newton had been at the hospital "the greatest portion of the time. I think she went back for the weekend, it seems like, and came back the following week. Then, from in November and the first of December, I think she visited Dr. Newton and was with him. I think she has been with him—of course, I don't have any occasion

to see her." "Q. She just spent a few days with him and she went home. A. That is right."

He testified that Mrs. Newton came to Snyder in November and stayed there during the month of December, and, about the time he left, which was about January 23, 1951, he thought she went back on a weekend for a few days. He testified that he believed Dr. Newton "went down" for Christmas.

This is the substance of all the testimony pertinent to the question whether Newton, as a matter of law, has a second residence in Scurry County.

 Pursuit of business interests in a locality is not conclusive of residence there. 12 A.L.R.2d 764; Caprito v. Weaver, Tex.Civ.App., 63 S.W.2d 1043, 1044.

In International & G. N. Ry. Co. v. Elder, 44 Tex.Civ.App. 605, 99 S.W. 856, W.D., the court approved an instruction that the word residence meant a fixed and permanent abode or dwelling place for the time being, as contradistinguished from a mere temporary locality of existence.

Whether a stay is temporary or permanent is usually a question of intention that may be proved by declaration and acts. Snyder v. Pitts, Chief Justice, Tex. Sup., 241 S.W.2d 136, 141.

Although there is evidence tending to prove the contrary, Newton declared to an associate that he was not going to move from Milam County; that he would not buy a home in Snyder; that he had a home in Milam County and expected to continue to have it there and not in Scurry County. He testified that the contract provided for Greer to have control of the business of the Scurry County hospital and that he told Greer that he did not expect to be in Snyder and wanted someone to manage his business there.

Evidence that Newton complied with the law requiring a person who transacts business under an assumed name to file with the county clerk of each county where he transacts, or intends to transact, business, a certificate stating the names of the persons transacting the same, with their post office addresses, is, of course, not conclusive on the question of a second residence. See Art. 5924. Likewise, the fact that he complied with Art. 4498, which requires doctors to register with the District Clerk of every county in which they may reside, maintain an office or "may designate a place for meeting, advising with," treating or prescribing for patients, the certificate evidencing his right to practice medicine, together with his post office address, etc., is not conclusive of the question.

We believe that the evidence in Snyder v. Pitts, Chief Justice, supra, that Snyder resided in Dallam County is stronger on all controlling points than is the evidence that Newton has a second residence in Scurry County, yet the Supreme Court held the question of a second residence to be one of fact. See also Bolton v. Alley, Tex. Civ.App., 25 S.W.2d 638 and International & G. N. Ry. Co. v. Elder, 44 Tex.Civ.App. 605, 99 S.W. 856.

The burden was on appellant to prove that Newton had a second residence in Scurry County. After careful study of all the testimony, we have concluded that such second residence has not been conclusively established. See Najera v. Great Atlantic & Pacific Tea Co., 146 Tex. 367, 207 S.W.2d 365, 367.

The judgment is affirmed.